Charles KELLER, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–89–01198–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 22, 1991.

Rehearing Denied Oct. 10, 1991.

Discretionary Review Refused Feb. 12, 1992.

Buddy Stevens, Angleton, and Troy McKinney, Houston, for appellant.

Jim Mapel, Brazoria County Dist. Atty., for appellee.

Before DUGGAN and COHEN, JJ., and DYESS, former Justice, Assigned.*

## OPINION

DUGGAN, Justice.

A jury found appellant guilty of misdemeanor theft of service of a value of more than $200 but less than $750, and the trial court assessed his punishment at a fine of $1000. In five points of error, appellant contends the trial court abused its discretion in admitting, over his objection, evidence of four prior extraneous transactions.

Appellant was charged with theft of service in an information which alleged that he:

> on or about the 12th day of August, 1988 ... unlawfully, intentionally and knowingly by deception secure[d] performance of a service, to wit: auto repair labor, of the value of more than $200.00, but less than $750.00, intending to avoid payment for the service and knowing that the service is provided only for compensation, from MONTE DICK, owner, without the effective consent of said owner.

In August of 1988, appellant engaged Nelson Machine Products to perform automotive repair work on his Camaro racing car and also to weld a trailer hitch on his Lincoln Continental. Monte Dick testified that the total charge for this work was $644.74. On Friday, August 12, 1988, appellant tendered a check to Troy Harris, an employee at Nelson Machine Products, and picked up his car. Appellant then placed a stop payment on the check on August 15, 1988. Dick testified that he never received payment for the work performed on appellant's vehicles.

In point of error one, appellant challenges the admissibility of David Risinger's testimony because it constituted an inadmissible extraneous transaction. Risinger, the owner of David's Speed Needs, a supplier of performance parts for automobiles and boats, testified that in June of 1987, some 14 months before the instant transaction, appellant placed an order for automobile parts. Risinger shipped the requested parts C.O.D. to appellant, who then tendered a check dated June 23, 1987.[1] Risinger testified that he never received payment for the parts. Appellant objected to this testimony on the grounds that: (1) Risinger's testimony was not relevant to show intent; (2) the extraneous offense does not qualify as a similar act; (3) the extraneous matter is too remote in time; (4) the prejudicial effect of the evidence far outweighed its probative value; and (5) it would confuse the issue the jury must decide.

In point of error two, appellant complains of the admission of David Castleberry's testimony because it constituted an inadmissible extraneous transaction. Castleberry, president of California Specialities d/b/a Concepts Home Decorating Center, testified that appellant requested him to install miniblinds at appellant's place of business in June of 1986, some 12 months before the transaction with David's Speed Needs. Castleberry testified that appellant never paid for the services rendered, but instead threatened him with litigation. Castleberry stated that prior to the

---

* The Honorable Arthur D. Dyess, former Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

1. While the check is in the record, and shows that payment was stopped, it was never admitted in evidence.

miniblind contract, he installed some floor tile at appellant's place of business. After the miniblinds were installed, a dispute arose between appellant and Castleberry regarding the floor tile. Appellant sent Castleberry a letter stating that the balance due on the vertical blinds would be paid when the floor tile was repaired and guaranteed. The State offered Castleberry's testimony to demonstrate that appellant's promise to pay him for the miniblinds was unfulfilled, which was evidence that he never intended to pay Castleberry. Appellant objected to this testimony on the grounds that: (1) this was an extraneous matter; (2) it was irrelevant; (3) the transaction was too remote; (4) this was an entirely different matter; and (5) the prejudicial effect outweighed the probative value.

In point of error three, appellant challenges the admission of Richard Harris' testimony on the basis that it constituted an inadmissible extraneous offense. Harris, president of Pearland Marine, testified that appellant contacted him in April of 1986 regarding repairs on his boat. Harris prepared an estimate for the cost of the work to be performed in the amount of $13,828.14. The repairs began on April 23, 1986, and concluded on July 24, 1986, at which time Harris presented appellant a final invoice in the amount of $11,368.55. Harris testified that he never received any payment on the final invoice amount. Appellant objected to Harris' testimony on the grounds that this transaction: (1) was an extraneous matter; (2) was too remote; (3) had no similarity to the offense on trial; (4) tended to confuse the jury; and (5) was not relevant to any issue in this case.

In point of error four, appellant contends the trial court erred in admitting the testimony of Elton Glaze because it constituted an inadmissible extraneous offense. Glaze, president of Showboat Marine Services, testified that appellant contracted with him in October of 1986 to do some outboard motor work, and gave him an $800 check dated November 20, 1986, some seven months before the transaction with David's Speed Needs, for partial payment of the work performed. Glaze deposited this check but received it back 30 days later, bearing a stop payment notation. Glaze redeposited this check and received payment. Appellant objected to the testimony on the grounds that it: (1) was of an extraneous matter; (2) was not relevant to any issue; (3) would only confuse the jury; (4) was too remote; (5) was not sufficiently similar to this transaction; and (6) had a prejudicial effect outweighing its probative value.

Appellant's fifth point of error asserts that the testimony of H.L. Baker, which also dealt with the Showboat Marine Services transaction, constituted evidence of an inadmissible extraneous offense. Baker, president of First National Bank, testified that appellant attempted to stop payment on the November 20, 1986, check payable to Showboat Marine. Payment was not in fact stopped, however, because the bank's reader-sorter failed to pull the check. Appellant objected to Baker's testimony on the grounds that it: (1) was not relevant to this case; and (2) would tend to confuse the jury.

▇▇▇ For evidence of an extraneous offense to be admissible, a two-part test must be met. First, the transaction must be relevant to a material issue in the case. Second, the relevancy value of the evidence must outweigh its inflammatory or prejudicial potential. *Crank v. State*, 761 S.W.2d 328, 342 (Tex.Crim.App.1988), *cert. denied*, 493 U.S. 874, 110 S.Ct. 209, 107 L.Ed.2d 162 (1989); *Baize v. State*, 790 S.W.2d 63 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd). This analysis is to be conducted within the framework provided by the particular facts and circumstances of each case, and does not lend itself to any readily quantifiable set of factors which militate for or against admissibility. *Crank*, 761 S.W.2d at 342. The analysis is for the trial judge in the first instance and, absent a clear abuse of discretion, the trial court's decision will not be disturbed on appeal. *Id.*

▇▇▇ Evidence is relevant which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evi-

dence." TEX.R.CRIM.EVID. 401. Under TEX. R.CRIM.EVID. 402 "[a]ll relevant evidence is admissible except as otherwise provided by.... these rules or by other rules prescribed pursuant to statutory authority." Rule 403 favors the admissibility of relevant evidence, and the presumption is that relevant evidence will be more probative than prejudicial. TEX.R.CRIM.EVID. 403; *Montgomery v. State*, 810 S.W.2d 372, 377 (Tex.Crim.App.1991). Trial courts should favor admission in close cases, in keeping with presumption of admissibility of relevant evidence. *Id.* at 378. Under TEX. R.CRIM.EVID. 404(b), evidence of other crimes, wrongs or acts may not be admissible to prove character in order to show that one acted in conformity therewith, but may be admissible to prove, among other factors, intent.

■ A trial court must be given wide latitude to exclude or not exclude misconduct evidence as it sees fit. *Montgomery*, at 390. As long as the trial court's ruling is within the "zone of reasonable disagreement," appellate courts may not intercede. *Id.* at 391.

■ With the charge of theft of service by deception, it was incumbent upon the State to prove beyond a reasonable doubt that, among other elements of the offense, appellant intended to avoid payment for the services. The extraneous transactions were offered as evidence of appellant's intent to avoid payment for the services rendered by Nelson Machine Products. The four instances allowed in evidence showed appellant's failure to pay others on four prior occasions for services or parts, and make it more probable than not that appellant never intended to pay Nelson Machine Products for its services rendered. Therefore, the evidence was relevant under rule 401 and admissible under rule 404(b) to show intent.

■ Once the proponent of evidence shows that it is material, it is admissible unless the opponent demonstrates that the negative attributes of the evidence substantially outweigh any probative value. *Montgomery*, at 377; *Crank*, 761 S.W.2d at 342 n. 5; *Rodda v. State*, 745 S.W.2d 415 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd); TEX.R.CRIM.EVID. 403. Several factors may be used to determine whether the probative value of an extraneous transaction outweighs the prejudicial effect.

■ Similarity between the extraneous transactions and the charged offense is an important measure of probative value. We note that the trial court sustained appellant's objection to the State's proffer of two additional transactions on grounds that they were not similar to the charged offense. Each of the four transactions admitted into evidence involved appellant's procurement of parts and/or labor from others in exchange for his promise of payment, and each transaction showed his nonpayment or attempted nonpayment (in the case of the attempted stop payment on appellant's check to Showboat Marine on November 20, 1986). We find that these transactions were similar in nature to the offense for which appellant was tried. Appellant's repeated failure to pay in the four transactions allowed in evidence leads logically to the inference that he lacked the intent to pay in the present instance. *See Plante v. State*, 692 S.W.2d 487, 494 (Tex. Crim.App.1985). In *Plante*, the Court of Criminal Appeals found that the probative value of similar evidence increases as the number of instances of nonpayment increases. *Id.* Moreover, the State need not show as high a degree of similarity between extraneous offenses when, as here, the purpose of the proof is to show intent. *Id.* at 493. A high degree of similarity is required when the extraneous offense is offered to prove identity. *Id.*

A second factor used to measure the probative value of a transaction is its closeness in time to the charged offense. Here, the transactions were spread over a period of 26 months before the commission of the charged offense. In *Plante*, the court held that 18 months was not too remote, but 35 months was. 692 S.W.2d at 495. Here, the most recent of the four extraneous offenses was 14 months and the most distant was 26 months. The most distant, the 26 month old offense, is halfway between *Plante's* 18 and 35 month finding. We

hold that the extraneous transactions were not too remote in time.

A third factor used to measure probative value of extraneous transactions is the availability of other sources of proof. Here, the State's evidence of appellant's intention to avoid payment for the services obtained on the primary offense was circumstantial and less convincing when seen in isolation than when seen as an ongoing modus operandi.

Additionally, the prejudicial effect of the evidence was lessened by the court's charge instruction limiting the jury's consideration of the evidence to the purpose of determining appellant's intent and knowledge in this case. *Plante*, 692 S.W.2d at 494. Finally, as stated in *Montgomery*:

> The appellate court should not conduct a *de novo* review of the record with a view to making a wholly independent judgment whether the probative value of evidence of "other crimes, wrongs, or acts" is substantially outweighed by the danger of unfair prejudice. It should reverse the judgment of the trial court "rarely and only after a clear abuse of discretion." This appellant deference is a rule of judicial restraint, intended, once again, to avoid the anomaly of having appellate courts usurp a function that the system assigns to the trial court.

At 395. In short, the appellate court should afford the trial judge a "limited right to be wrong," so long as the result is not reached in an "arbitrary or capricious manner." *Id.* at 391 (citing Rosenberg, *Judicial Discretion*, 38 Ohio Bar 819, 823 (1965)).

Appellant has not shown that the negative attributes of the evidence substantially outweigh the probative value, or that the trial court's ruling admitting the evidence was not within the "zone of reasonable disagreement." *Montgomery*, at 391.

Appellant's points of error one through five are overruled.

The judgment is affirmed.