TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00693-CR







Duane Johnson, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT


NO. 0934323, HONORABLE MICHAEL LYNCH, JUDGE PRESIDING








 This appeal is taken from a conviction for capital murder. Tex. Penal Code Ann.
§ 19.03(1)(a)(2) (West 1994). (1) After the jury found appellant Duane Johnson guilty, the trial
court assessed punishment at life imprisonment as the State did not seek the death penalty. See
Tex. Code Crim. Proc. Ann. art. 37.07, § 1 (West Supp. 1996).

 Appellant advances two points of error concerning the admission of an extraneous
offense into evidence at the guilt/innocence stage of the trial. First, appellant urges that the trial
court abused its discretion in finding the extraneous offense was relevant to the contested issue
of intent under Rule 404(b) of the Texas Rules of Criminal Evidence. Second, appellant contends
that the trial court abused its discretion in overruling his objection to the admission of the
extraneous offense based on Rule 403 of the Texas Rules of Criminal Evidence and finding that
its probative value was not substantially outweighed by the danger of unfair prejudice.

 The sufficiency of the evidence is not challenged. In the early morning of July 10,
1993, an individual living near the intersection of Dessau Road and Yager Lane in Travis County
called 911 to report an apparent automobile accident. The lifeless body of Mark Long, age 31,
was found in his 1966 Pontiac convertible. EMS personnel were unable to revive him. The
autopsy revealed that the cause of death was a gunshot wound at the nape of neck, which injured
the spinal column and cord, and in the opinion of the medical examiner, caused instantaneous
death. A fragmented .22 caliber bullet was recovered from the body. The record reflected that
Long was in Austin to visit his natural mother whom he had not seen since he was five years old.

 An informer's tip led the peace officers to appellant who gave an extrajudicial
written confession and led the officers to the .22 caliber Beretta pistol that he had used. Ballistics
tests revealed that the bullet recovered from Long's body had been fired from the recovered
weapon. The State introduced a redacted version of appellant's confession. (2) The confession
reflected that the "day before we killed the dude in the convertible," appellant was with Antonio
Wilkins, Patrick Greg Chatham, Seaton Salazar, and Ramont Taylor. They drove around most
of the day in Greg's Cadillac automobile, and while driving "we were talking about how we
needed money. We decided we were going to jack a car and rob someone." About 1:00 a.m. on
Saturday morning, on the outskirts of Austin, they found a location suitable for their needs at the
intersection of Dessau Road and Yager Lane where road construction was apparently taking place. 
The confession reveals the group moved some construction barricades to block the road and then
placed a stop sign in the middle of the road. Appellant, Wilkins, and Salazar hid in the bushes
nearby. Salazar had a BB gun, Wilkins had a shotgun, and appellant had a .22 caliber pistol. 
Greg Chatham and Ramont Taylor waited in the Cadillac nearby for the threesome to complete
their task.

 Within minutes, according to the confession, a light-colored convertible driven by
a white male about thirty years of age approached the barricades and stopped. Appellant went to
the left rear of the car and the other two men went to the sides of the vehicle. Salazar demanded
that the driver get out of the car. The driver put the convertible in reverse and began to back up. 
At this point, appellant confessed that he shot at the driver and saw the "guy go down." The
convertible hit a curb with a loud bang and turned in the opposite direction. Appellant stated that
he and his two accomplices ran to Greg Chatham's Cadillac. They drove back to the convertible
but left immediately because of oncoming traffic. Appellant learned from "the news" that the
driver was dead. Appellant later learned that Wilkins had fired his shotgun at the same time
appellant fired the pistol, but understood that Wilkins had aimed at the car.

 The pertinent portion of the extrajudicial confession relating to the redacted portion
provided:



. . . The car started to back off and it was about fifteen to twenty feet away when
I shot at the driver. The guy was looking right at me when I shot. I only fired
once and the guy went down. The guy still had his hands on the wheel and the car
started moving faster in reverse. [redacted portion #1]


I've been thinking this everyday and since it's happened. I had read about how the
guy that I killed came to Austin to see his mother. When I read this my eyes
almost teared up. [redacted portion #2] My intent was to take the guy's
wallet. I don't know if Seaton or Tony planned on stealing his car.



 Immediately after the State introduced the redacted statement, appellant introduced
the entire original statement. See Tex. R. Crim. Evid. 106, 107. This exhibit included the
redacted portions as follows:



Redacted portion #1 - I didn't think that I hit him because I was aiming at the door.


Redacted portion #2 - I didn't mean to kill the guy in the convertible.



 During the presentation of defense testimony, appellant called a Texas Department
of Public Safety ballistics expert, William Sorrow, who had examined and test-fired the .22
caliber weapon that had inflicted the fatal wound. Sorrow testified that approximately an inch had
been cut off the barrel of the pistol in question, that at a distance of fifteen feet the pistol shot
three to five inches above the point of aim, and at a distance of twenty feet the pistol shot five to
seven inches higher than the point of aim. Sorrow acknowledged that the pistol was a firearm and
was a deadly weapon.

 After both sides rested, the State, in rebuttal, called Aimee Reye to testify about
an earlier extraneous offense on the basis that the issue of intent was now contested. Appellant
first objected on the basis of Rule 404(b), and when that objection was overruled, he objected on
the basis of Rule 403. See Montgomery v. State, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990)
(op. on reh'g). The latter objection was also overruled and Reye was permitted to testify in
rebuttal. (3)

 Reye testified that, approximately two weeks prior to June 26, 1996, she was
present with her boyfriend, Stephen Moreno, at appellant's house when appellant and Moreno got
into a fight over a necklace that appellant was wearing which Moreno claimed belonged to
Moreno's brother. After the police left the scene, appellant told Moreno that he "was going to
get shot" and told Reye that if she was with Moreno she would "get shot, too." Reye revealed
that in the early morning hours of June 26, 1993, she and Moreno were driving home from a
movie, when a car approached from the opposite direction. Reye saw appellant rise up out of the
passenger side window of the other car, aim a pistol at them over the top of the other car and
begin to fire. She also saw "Tony" Wilkins aim a shotgun out of the back window of the other
car and began firing. Moreno was hit in the arm with buckshot. Reye related that she and
Moreno were chased but were able to elude the other car and to flag down a patrolling policeman. 
Later, Reye found pistol bullets in the exterior of her car and in the dash of her vehicle.

 In turn, appellant called one of the prosecutors in the instant case, Frank Bryan,
to testify before the jury. Bryan stated that appellant had been indicted on December 10, 1993,
for aggravated assault growing out of the incident involving Aimee Reye and Stephen Moreno. 
Bryan related that the indictment alleged in the first count that appellant "knowingly or
intentionally threatened imminent bodily injury," and in the second count that appellant
"knowingly or intentionally cause[d] bodily injury to Stephen Moreno," and that the indictment
did not allege appellant had the intent to kill Moreno. Bryan also testified that the pending case
was now being reconsidered, however, as an attempted murder case. He explained there had been
no urgency concerning the pending case in view of the pendency and trial of the instant capital
murder case. We do not find that after Bryan's testimony appellant asked for any relief or further
objected to the evidence of the extraneous offense already admitted.

 After both sides rested and closed at the guilt/innocence stage of the trial, the trial
court submitted an instruction limiting the jury's consideration of the extraneous offense, if any,
to the issue of intent and required the jury to first find beyond a reasonable doubt that appellant
committed the extraneous offense.

 With this background, we examine appellant's contentions on appeal. Evidence
is relevant if it has "any tendency to make the existence of any fact that is of consequence to the
determination of the action more probable or less probable than it would be without the evidence." 
Tex. R. Crim. Evid. 401; Keller v. State, 818 S.W.2d 425, 428-29 (Tex. App.--Houston [1st
Dist.] 1991, pet ref'd). All relevant evidence is admissible except as otherwise provided by
constitutions, statutes, or rules prescribed by statutory authority. Tex. R. Crim. Evid. 402. 
Although relevant, evidence may be excluded if its probative value is substantially outweighed by
the danger of unfair prejudice, confusion of issues, etc. Tex. R. Crim. Evid. 403. Rule 403
favors the admissibility of relevant evidence. The presumption is that relevant evidence will be
more probative than prejudicial, and in close cases, trial courts shall favor admission in keeping
with this presumption. Montgomery, 810 S.W.2d at 377, 378; Keller, 818 S.W.2d at 429. Rule
404(b) provides, however:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character
of a person in order to show that he acted in conformity therewith. It may,
however, be admissible for other purposes, such as proof of motive, opportunity,
intent, preparation, plan, knowledge, identity, or absence of mistake or accident,
provided, upon timely request by the accused, reasonable notice is given in
advance of trial of intent to introduce in the State's case in chief such evidence
other than that arising in the same transaction.



 This rule embodies the traditional Texas rule that has approved the general
principle "that an accused person is entitled to be tried on the accusation made in the State's
pleading and not on some collateral crime, or for being a criminal generally." Cantrell v. State,
731 S.W.2d 84, 88 (Tex. Crim. App. 1987); Young v. State, 261 S.W.2d 836, 837 (Tex. Crim.
App. 1953). This is because such evidence is inherently prejudicial and the defendant's alleged
"`propensity to commit crimes' is not material to whether he is guilty of the specified conduct
which is charged." Elkins v. State, 647 S.W.2d 663, 665 (Tex. Crim. App. 1983); 1 Steven
Goode, Olin Guy Welborn III, & M. Michael Sharlot, Guide to The Texas Rules of Evidence: 
Civil and Criminal, § 404.6.1 at 165 (Texas Practice 2d ed. 1993) (hereinafter Goode). The
general rule is subject to the listed exceptions in Rule 404(b), but the exceptions listed and those
drawn from case law are not exclusive nor exhaustive. Goode at 165; Cantrell, 731 S.W.2d at
89.

 Under former case law, it has been held that extraneous transactions constituting
offenses shown to have been committed by the accused may become admissible upon a showing
by the prosecution both that the transaction is relevant to a material issue in the case and that the
relevancy value of the evidence outweighs its inflammatory or prejudicial potential. Elkins, 647
S.W.2d at 665; see also Cantrell, 731 S.W.2d at 89; Plante v. State, 692 S.W.2d 487, 491 (Tex.
Crim. App. 1985). Under the former case law, this test was called the true test for the
admissibility of extraneous offenses. Williams v. State, 662 S.W.2d 344, 346 (Tex. Crim. App.
1983).

 With the advent of the Texas Rules of Criminal Evidence, some significant changes
occurred in the traditional balancing process regarding the admissibility of extraneous act
evidence. See Goode at 167. These changes are discussed in Montgomery, 810 S.W.2d at 386-97. Two objections, rather than one, may now be necessary to preserve error in the admission
of extraneous offenses: one objection on the basis of Rule 404(b) and, if that is overruled, another
objection on the basis of Rule 403. Id. at 388. Rule 403 has also shifted the focus somewhat
from the second part of the former true test enunciated in Williams. The first part of the former
test (relevant to a material issue in the case) is now governed by Rule 404(b). Evidence of other
"crimes, wrongs, or acts" may be admissible if it has relevance apart from its tendency to prove
the character of a person in order to show that he acted in conformity therewith. Tex. R. Crim.
Evid. 404(b). A party may introduce such evidence where it logically serves to make more or less
probable an elemental fact or an evidentiary fact that inferentially leads to an elemental fact, etc. 
Bishop v. State, 869 S.W.2d 342, 346 (Tex. Crim. App. 1994); Montgomery, 810 S.W.2d at 387.

 If a Rule 404(b) objection is made to extraneous offense evidence, the proponent
of the evidence may persuade the trial court that the evidence has relevance apart from character
conformity; that it tends to establish some elemental fact, such as identity or intent; that it tends
to establish some evidentiary fact, such as motive, opportunity, or preparation leading inferentially
to an elemental fact; or that it rebuts a defensive theory by showing the absence of mistake or
accident, etc. Montgomery, 810 S.W.2d at 387-88.

 Appellant's first point is that the trial court erred in overruling his Rule 404(b)
objection. Turning to the instant indictment, we observe that it alleged in pertinent part that on
or about July 10, 1993, appellant, Ramont Taylor, and Patrick G. Chatham "in the course of
attempting to commit and committing robbery of Mark Philip Long, did then and there
intentionally commit murder by causing the death of an individual, Mark Philip Long shooting
him with a deadly weapon, to wit: a firearm."

 Specific intent to kill is an essential element of capital murder. Tex. Penal Code
Ann. § 19.03 (West 1994). In order to convict an accused of capital murder, the State must prove
and the jury must find beyond a reasonable doubt that the accused "intentionally committed the
murder" in the course of the underlying felony. Webb v. State, 760 S.W.2d 263, 268 (Tex. Crim.
App. 1988). This is the only culpable mental state. Demouchette v. State, 731 S.W.2d 75, 79-90
(Tex. Crim. App. 1986), cert. denied, 482 U.S. 920, 107 S. Ct. 3197, 96 L. Ed. 2d 685 (1987). 
Thus, this intent was an element that the State in the instant case was required to prove beyond
a reasonable doubt. "[W]here intent or guilty knowledge is an essential element of the offense
which the State must prove to obtain a conviction, its materiality goes without saying." Cantrell,
731 S.W.2d at 89 (quoting from Morgan v. State, 692 S.W.2d 877, 880 (Tex. Crim. App. 1985)).

 Intent can be characterized as a contested issue for purposes of justifying the
admission of extraneous offense evidence to help prove intent if the required intent for the primary
offense cannot be inferred from the act itself or if the accused presents evidence to rebut the
inference that the required intent existed. Caro v. State, 771 S.W.2d 610, 617 (Tex. App.--Dallas
1989, no pet.); McGee v. State, 725 S.W.2d 362, 364 (Tex. App.--Houston [14th Dist.] 1987, no
pet.). Intent is most clearly in issue when the defendant argues that the charged offense was
unintentional or the result of an accident. Keller, 818 S.W.2d at 428-29. In the instant case,
appellant offered parts of his confession that he did not mean to kill Long and did not think he hit
Long as he was aiming at the car door. Appellant also called a ballistics expert to show the
weapon shot slightly higher than the point of aim. Intent was clearly a material issue in dispute
when the extraneous offense was offered. Once the defendant claims accident, mistake, lack of
intent, etc., intent can no longer be inferred from other uncontested direct evidence, and the State
is allowed to prove intent through evidence of other crimes, wrongs, or acts, Montgomery, 810
S.W.2d at 375; Cantrell, 731 S.W.2d at 89, or to show violent acts where the defendant was an
aggressor. Robinson v. State, 844 S.W.2d 925, 929 (Tex. App.--Houston [1st Dist.] 1992, no
pet.).

 As noted, an extraneous offense is relevant outside of supporting an inference of
character conformity if it serves to make more or less probable an elemental fact. Montgomery,
810 S.W.2d at 387. Questions of relevancy should be left largely to the trial court, relying on
its own observations and experience, and the conviction will not be reversed absent an abuse of
discretion. Moreno v. State, 858 S.W.2d 453, 462 (Tex. Crim. App. 1993).

 Although the extraneous offense was not too remote, appellant claims a lack of
similarity with the offense charged or the intent involved. Although the extraneous offense was
not exactly the same as the charged offense, it need only be substantially similar to be admissible. 
Robinson v. State, 701 S.W.2d 895, 898 (Tex. Crim. App. 1981). (4) When extraneous offense
evidence is offered on the issue of intent, Texas courts have held that there is less need to show
significant identity between the facts of the other transactions and those of the case being tried. 
Goode, § 404.6.3 at 179. The degree of similarity need not be so great as if offered to prove,
say, the issue of identity. See Bishop v. State, 869 S.W.2d 342, 346 (Tex. Crim. App. 1994);
Morrow v. State, 735 S.W.2d 907, 909-10 (Tex. App.--Houston [14th Dist.] 1987, pet. ref'd); see
also Plante v. State, 692 S.W.2d 487, 491-92 (Tex. Crim. App. 1985).

 Both the instant offense and the extraneous offense involved violent acts by
appellant, shooting at other individuals in a car with a deadly weapon in the early morning hours
while accompanied by Tony Wilkens who was also shooting with a shotgun. Both involved
efforts to present the escape of individuals.

 Appellant relies upon Lazcano v. State, 836 S.W.2d 654 (Tex. App.--El Paso 1992,
pet. ref'd), to support his claim that the admission of the extraneous offense was reversible error. 
Appellant's reliance is misplaced. Lazcano is distinguishable. That cause involved the murder
of a female by ligature strangulation. The State was permitted to introduce an extraneous offense
where the teen-aged witness testified that some six weeks before the alleged murder she left a
private party with appellant to "make-out" in a nearby tool shed. When the defendant failed to
heed her requests to stop his sexual advances, the witness began to scream "rape" and appellant
covered her mouth. When the witness continued to scream, the defendant began to choke her. 
The witness was able to coax the defendant into releasing her and they went their separate ways. 
The appellate court found that the trial court erred in admitting the extraneous offense under the
issues of identity, motive, common plan, or intent. With regard to intent, the appellate court
found that the extraneous offense testimony did not indicate any intent to kill. Unlike the instant
case, there was no use of a deadly weapon in the extraneous offense. Moreover, the Lazcano
court observed that the defendant had not apparently challenged the "intent" element of the murder
indictment and that extraneous offense evidence is not admissible to prove scienter if the requisite
guilty intent can be inferred from the act itself. The court noted that medical examiner's
testimony and the photographic evidence illustrated the alleged ligature strangulation from which
the intent to kill could be strongly inferred without the need for support by the way of evidence
of an extraneous offense. In the instant case, appellant did challenge the "intent to kill" element
of the capital murder by offering parts of appellant's confession inconsistent with the redacted
exhibit offered by the State and by offering the testimony of a ballistics expert. With such
evidence in the record, the intent to kill was not clearly inferred from the act itself. We do not
deem Lazcano controlling or persuasive. We find that the trial court did not abuse its discretion
in admitting the extraneous offense under Rule 404(b) in light of the facts and circumstances of
the instant case. Moreover, an appellate court should not reverse a trial court's ruling that is
within the zone of reasonable disagreement. Montgomery, 810 S.W.2d at 391; Garcia v. State,
827 S.W.2d 27, 30 (Tex. App.--Corpus Christi 1992, no pet.). The first point of error is
overruled.

 Once an extraneous offense is found relevant to prove an elemental fact independent
of its tendency to show character conformity, a trial court must determine if the probative value
of the evidence is substantially outweighed by the danger of unfair prejudice provided that the
opponent of the evidence timely raises a Rule 403 objection. See Montgomery, 810 S.W.2d at
358. Competent defense counsel here timely objected on Rule 403 grounds after the trial court's
ruling on the Rule 404(b) objection. Several factors have been used to measure the probative
value of an extraneous offense: (1) presence of similarity between the extraneous act or offense
and the offense charged; (2) closeness in time of the extraneous transaction to the charged offense;
and (3) availability of alternative sources of proof. See Robinson v. State, 701 S.W.2d 895, 898
(Tex. Crim. App. 1985); Keller v. State, 818 S.W.2d at 429-30; Caro, 771 S.W.2d at 618.

 The similarities between the capital murder and the extraneous offense have already
been noted. There are certain differences between the two, but we conclude the similarities lend
substantive probative value to the extraneous transaction. Moreover, the State need not show a
high degree of similarity where, as here, the purpose of the proof is to show intent. Keller, 818
S.W.2d at 429. In addition, there was no question of remoteness. The two offenses, separated
by only two weeks, were sufficiently close in time to have provided additional probative value.

 Availability of alternative sources of proof is another factor. The material issue
here was intent. Proof of a culpable mental state generally relies upon circumstantial evidence. 
Dillion v. State, 574 S.W.2d 92, 94 (Tex. Crim. App. 1978); Fuller v. State, 819 S.W.2d 254,
257 (Tex. App.--Austin 1991, pet. ref'd). When examining the factor here involved, the courts
will consider whether the State's evidence is circumstantial or direct. Caro, 771 S.W.2d at 618
(citing Moore v. State, 700 S.W.2d 193, 198 (Tex. Crim. App. 1985), cert denied, 474 U.S. 113
(1986)). The State's evidence as to intent originally came from appellant's redacted confession. 
Appellant controverted and undermined the State's proof by introducing the balance of the
confession and the testimony of a ballistics expert raising a defensive theory. The ultimate issue
was seriously contested and this enhanced the probative value of the complained-of evidence. 
Because of the circumstantial nature of the proof of the mental state and in light of this record,
it does not appear that the State had other convincing evidence to establish the issue in dispute. (5)

 Turning to the question of whether the probative value of the extraneous transaction
was substantially outweighed by the unfair danger of prejudice, we observe that the evidence must
be unfairly prejudicial because most of the evidence offered by the prosecution to prove the
elements of an offense in any criminal case will be prejudicial. In the instant case, the trial court
gave a limiting instruction on the use of the extraneous transaction evidence. The nature of this
evidence was not of such a nature to impair the efficacy of the limiting instructions. The State's
jury argument was noninflammatory and there was little or no mention of the extraneous
transaction in its argument. These matters lessened the prejudicial impact of the admission of the
evidence. Given the high probative value of the evidence and its lower prejudicial effect, we
conclude the trial court did not abuse its discretion in overruling the Rule 403 objection. That
rule favors the admissibility of relevant evidence and the presumption is that relevant evidence
will be more probative than prejudicial. Montgomery, 810 S.W.2d at 377, 378. The trial court
also apparently applied the appropriate standard for the admissibility of extraneous transaction
evidence. See Harrell v. State, 884 S.W.2d 154, 159 (Tex. Crim. App. 1994). The second point
of error is overruled.

 The judgment is affirmed.



 

 John F. Onion, Jr., Justice

Before Chief Justice Carroll, Justices Kidd and Onion* 

Affirmed

Filed: October 16, 1996

Publish







* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1988).

1.   The current code is cited for convenience. The applicable law was that in effect at the
time of the commission of the offense. Act of April 15, 1985, 69th Leg., R.S., ch. 44, § 1,
1985 Tex. Gen. Laws 434 (Tex. Penal Code § 19.03(l)(a)(2), since amended).
2.   Russeau v. State, 785 S.W.2d 387, 390 (Tex. Crim. App. 1990), abolished the voucher
rule. The State is no longer required to delete portions of a defendant's statement or face the
possibility of acquittal. See Tex. R. Crim. Evid. 607.
3.   The careful trial court had earlier, out of the jury's presence, heard Reye's testimony
before it was admitted before the jury.
4.   The mere fact that certain dissimilarities are present between the extraneous offense
and the offense for which the accused is on trial does not make the extraneous offense
inadmissible if the accused is clearly identified and shown to be the perpetrator of the
extraneous offense. Cantrell, S.W.2d at 90 n.1 (citing Lewis v. State, 674 S.W.2d 423 (Tex.
App.--Dallas 1984, pet. ref'd)).
5.   Montgomery, 810 S.W.2d at 392, also listed factors to be considered but these are inclusive
of those discussed or are otherwise considered in our discussion. See Taylor v. State, 920 S.W.2d
319, 322-23 (Tex. Crim. App. 1996).


. 113
(1986)). The State's evidence as to intent originally came from appellant's redacted confession. 
Appellant controverted and undermined the State's proof by introducing the balance of the
confession and the testimony of a ballistics expert raising a defensive theory. The ultimate issue
was seriously contested and this enhanced the probative value of the complained-of evidence. 
Because of the circumstantial nature of the proof of the mental state and in light of this record,
it does not appear that the State had other convincing evidence to establish the issue in dispute. (5)

 Turning to the question of whether the probative value of the extraneous transaction
was substantially outweighed by the unfair danger of prejudice, we observe that the evidence must
be unfairly prejudicial because most of the evidence offered by the prosecution to prove the
elements of an offense in any criminal case will be prejudicial. In the instant case, the trial court
gave a limiting instruction on the use of the extraneous transaction evidence. The nature of this
evidence was not of such a nature to impair the efficacy of the limiting instructions. The State's
jury argument was noninflammatory and there was little or no mention of the extraneous
transaction in its argument. These matters lessened the prejudicial impact of the admission of the
evidence. Given the high probative value of the evidence and its lower prejudicial effect, we
conclude the trial court did not abuse its discretion in overruling the Rule 403 objection. That
rule favors the admissibility of relevant evidence and the presumption is that relevant evidence
will be more probative than prejudicial. Montgomery, 810 S.W.2d at 377, 378. The trial court
also apparently applied the appropriate standard for the admissibility of extraneous transaction
evidence. See Harrell v. State, 884 S.W.2d 154, 159 (Tex. Crim. App. 1994). The second point
of error is overruled.

 The judgment is affirmed.