**Opinion issued January 28, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00925-CR

————————————

**EFRIAN SERGIO SANCHEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 184th District Court**
**Harris County, Texas**
**Trial Court Case No. 1295538**

---

## MEMORANDUM OPINION

A jury convicted Efrian Sergio Sanchez of reckless injury to his five-week-old daughter, assessed punishment at 20 years' imprisonment, and imposed a $10,000 fine.[1] In two issues, Sanchez contends (1) the evidence was insufficient to

---

[1] TEX. PENAL CODE ANN. § 22.04(a) (West Supp. 2013).

support the jury's verdict and (2) the trial court erred by admitting extraneous evidence of Sanchez's prior bad acts. We affirm.

## Background

Sanchez and his wife, J. Covey, have three children. Covey had just put their five-week-old daughter, E.S., down for a nap when Sanchez came home from work. While Covey was in the shower, E.S. woke up and began to cry. Sanchez tried to quiet her, but she continued to cry. Sanchez took E.S. into a bedroom and locked the door because he worried one of the other children would open the door and bother him. Sanchez tried to feed E.S.; she would not take a bottle and continued to cry. According to Sanchez, he grew frustrated, "blanked out," and started shaking E.S. When E.S. continued to cry, Sanchez shook her harder.

When Covey got out of the shower, she tried to open the bedroom door to check on E.S., but Sanchez did not immediately open the door. When she finally entered the bedroom, she saw E.S. gasping for air. Covey could not feel any air coming out of E.S.'s nose. According to Covey, Sanchez said that E.S. was trying to sleep and not to worry about it. Covey ran to get her father who lived in the same apartment complex. Covey and her father immediately took E.S. to Bayshore Medical Center. Sanchez did not go to the hospital.

Bayshore Medical Center doctors assessed E.S.'s condition and decided to transfer her by helicopter to Clear Lake Regional Medical Center. E.S. was having

seizures when she arrived at Clear Lake. Dr. Malkani described her condition as critical and observed that the soft spot on the top of her head bulged abnormally, indicating increased pressure in her brain. A CAT scan showed a subdural hematoma (bleeding inside the brain) on both sides. Dr. Malkani diagnosed E.S. with shaken baby syndrome, a condition caused by severe shaking of a child that results in ruptured blood vessels in the brain. Because of the acute nature of E.S.'s bleeding, Dr. Malkani transferred her by helicopter to Memorial Hermann Children's Hospital for evaluation by a pediatric neurosurgeon.

At Memorial Hermann, doctors surgically drained some of the fluid from E.S.'s brain to control her seizures. After reviewing the Bayshore records, Dr. Girardet, E.S.'s treating physician at Memorial Hermann, testified that E.S. was in critical condition when she arrived at Bayshore and might have died if Covey had not immediately taken E.S. to the emergency room. Both Dr. Girardet and Dr. Malkani ruled out all other potential causes of E.S.'s injuries and concluded that severe shaking had caused permanent brain damage.

The jury found Sanchez guilty of reckless injury to a child. This appeal followed.

## Sufficiency of the Evidence

In his first issue, Sanchez contends that the evidence is insufficient to support the jury's verdict because the State failed to prove that Sanchez caused E.S. serious bodily injury.

### A.     Standard of review

We review the legal and factual sufficiency of the evidence under a single standard. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see Ervin v. State*, 331 S.W.3d 49, 52–54 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). Evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational fact finder could have found each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). Evidence is insufficient under this standard when (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense, or (2) the evidence conclusively establishes a reasonable doubt. *See Jackson*, 443 U.S. at 314, 320, 99 S. Ct. at 2786, 2789; *see also Laster*, 275 S.W.3d at 518.

We presume that the fact finder resolved any conflicts in the evidence in favor of the verdict and defer to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton v. State*, 235

S.W.3d 772, 778 (Tex. Crim. App. 2007). We treat direct and circumstantial evidence in the same way: they are equally probative in establishing the guilt of an actor and circumstantial evidence alone can be sufficient. *Clayton*, 235 S.W.3d at 778; s*ee also Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006) (holding "cumulative force" of all circumstantial evidence can be sufficient to support guilty verdict).

**B.     There was sufficient evidence of serious bodily injury**

Sanchez argues that there was insufficient evidence that, by shaking E.S., he inflicted serious bodily injury to her. The State points to expert medical testimony emphasizing E.S.'s critical condition and the lasting effects of her injury.

A person commits the offense of injury to a child if he "intentionally, knowingly, recklessly, or with criminal negligence" causes serious bodily injury to a child. TEX. PENAL CODE ANN. § 22.04(a) (West Supp. 2013). Serious bodily injury is defined as an "injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PENAL CODE ANN. § 1.07(a)(46) (West Supp. 2013). To show protracted loss of a bodily member or organ, the injuries must be "continuing . . . lingering . . . long-drawn . . . never-ending, ongoing . . . [or] prolonged." *Moore v. State*, 739 S.W.2d 347, 352 (Tex. Crim. App. 1987).

5

When considering the sufficiency of evidence to establish a serious bodily injury, we consider the injury "'as it was inflicted, not after the effects had been ameliorated or exacerbated by other actions such as medical treatment.'" *Stuhler v. State*, 218 S.W.3d 706, 715 (Tex. Crim. App. 2007) (holding that only minor dysfunction with "no serious long-term ramifications" did not meet statutory requirements for serious bodily injury); *cf. Bearnth v. State*, 361 S.W.3d 135, 141 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (upholding felony-murder conviction based on evidence of bruises from being beaten and skull fracture caused by blunt force trauma to head).

### 1. Substantial risk of death

Serious bodily injury includes "bodily injury that creates a substantial risk of death." *See Id*. Whether there was a substantial risk of death turns upon the likelihood the injury inflicted would result in death, regardless of what could have occurred if the injury were left untreated. *See Stuhler,* 218 S.W.3d at 715. Rather than examining what could have occurred, a court should examine what likely "would" have occurred "absent medical intervention." *Id.* at 715.

According to Dr. Malkani, a pediatric intensive care physician at Clear Lake Regional Medical Center, E.S.'s condition was so critical that she could not be treated at a community hospital. E.S. was barely able to breathe on her own, requiring doctors to insert a breathing tube in her throat and put her on a ventilator.

Her condition was so severe that she was twice transferred by helicopter to receive more advanced emergency care. After reviewing CAT scan images, Dr. Malkani described the bleeding in E.S.'s brain as "acute onchronic" meaning that the injury causing the bleeding had occurred no more than a few hours before E.S. arrived at the hospital. Clear Lake doctors observed that the "soft spot" on her skull was swollen and bulging and that she was having seizures. Dr. Malkani testified that the pressure caused by the bleeding was so severe that E.S. needed to be transferred quickly to be examined by a pediatric neurosurgeon.

Dr. Malkani and Dr. Girardet both testified that E.S. suffered from shaken baby syndrome—intentional violent force that can cause death. Dr. Malkani and Dr. Girardet explained that the force of the shaking ruptured blood vessels in her brain, allowing blood to pool on both sides of her brain, created a subdural hematoma, and caused seizures. Unable to control E.S.'s seizures and continued brain swelling, a Memorial Hermann neurosurgeon put two "burr holes" in the top of her head to drain fluid from her brain. This procedure aimed to control E.S.'s seizures and relieve pressure on her brain. Dr. Girardet, the treating doctor at Bayshore, testified that if E.S. had not been given immediate medical treatment, she risked death.

Based on this evidence, a rational jury could find that E.S.'s injuries caused a substantial risk of death.

## 2. Protracted loss of function

Because E.S.'s injuries are on-going, there is also sufficient evidence that she suffered protracted loss of brain function. *See* TEX. PENAL CODE ANN. § 1.07(a)(46) (defining serious bodily injury as "protracted loss or impairment of the function of any bodily member or organ"); *Moore*, 739 S.W.2d at 352 (loss of a bodily member or organ is "protracted" when it is "continuing . . . never-ending [or] ongoing."); *see also Gonzales v. State*, 191 S.W.3d 741, 753 (Tex. App.—Waco 2006, pet. ref'd) (holding that testimony that injury caused risk of brain damage was sufficient to meet § 1.07(a)(46) definition).

Dr. Girardet testified that when Sanchez shook E.S., parts of her brain tissue ruptured and died. E.S.'s doctors explained that dead brain tissue does not regenerate. Dr. Malkani compared shaken baby syndrome injuries to injuries from a stroke—once damage to the brain has occurred, the damage is irreversible.

After the incident, E.S. was placed in foster care. According to E.S.'s foster mother, E.S.'s injuries caused developmental delays and require that she be treated with anti-seizure medication for the rest of her life. She also testified that E.S. is weak in her extremities, must use a leg brace on her right leg to walk, and has differing levels of strength in her right and left arms. In order to develop muscle strength and ensure that her condition does not regress, E.S. attends physical and occupational therapies. Based on testimony that E.S.'s damage is irreversible and

8

permanent, there was sufficient evidence from which a jury could conclude that E.S.'s injuries were permanent. *See Moore*, 739 S.W.2d at 352.

Based on evidence that E.S.'s injuries created a substantial risk of death and are protracted and ongoing, we conclude that a rational jury could likewise find that Sanchez caused serious bodily injury to E.S. *See* TEX. PENAL CODE ANN. §§ 1.07(a)(46), 22.04; *Garcia v. Sate*, 16 S.W.3d 401, 405 (Tex. App.—El Paso 2000, pet. ref'd).

We overrule Sanchez's first issue.

### Admission of Evidence

In his second issue, Sanchez argues that the trial court improperly admitted evidence of (1) a prior incident of putting a blanket into E.S.'s mouth to quiet her and (2) his prior marijuana use.

### A.     Standard of review

We review a trial court's evidentiary rulings for an abuse of discretion. *Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2006); *Walker v. State*, 321 S.W.3d 18, 22 (Tex. App.—Houston [1st Dist.] 2009, pet. dism'd). We will uphold a trial court's decision unless it falls outside the "zone of reasonable disagreement." *Oprean*, 201 S.W.3d at 726; *Walker*, 321 S.W.3d at 22. In cases involving injury to a child, evidence of a defendant's other relevant bad acts may be admitted to show: "(1) the state of mind of the defendant and the child; and (2)

9

the previous and subsequent relationship between the defendant and the child."

TEX. CRIM. PROC. CODE ANN. art. 38.37 (West Supp. 2013).

## B. No abuse of discretion by admitting evidence of prior bad act

Covey testified that days before E.S. went to the hospital, Covey found E.S. with the tip of a blanket in her mouth. Sanchez testified that he put the blanket tip into E.S.'s mouth so that she would not wake her older sister if she cried. Sanchez argues that the trial court abused its discretion by admitting evidence of this prior bad act. The State responds that it was admissible because it showed Sanchez's mental state and the character of his relationship with E.S. We agree.

Specifically, Sanchez contends the evidence was inadmissible under Rule 403.[2] Admissible evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." *Id*. When determining whether the prejudice of admitting evidence substantially outweighs the probative value, we consider (1) the probative value of evidence, (2) the potential the evidence has to impress the jury in some irrational but indelible way, (3) the time during trial required to develop evidence, and (4) the State's need for the extraneous evidence. *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005); *see also Smith v. State*, 355 S.W.3d 138, 153–54 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).

---

[2] In one sentence, Sanchez also cites Texas Rule of Evidence 404(b) to support his contention that the trial court erroneously admitted such evidence. But, Sanchez waived this argument because he neither raised this objection at trial nor discussed it in his brief. *See* TEX. R. EVID. 404(b).

A trial court has broad discretion to determine whether evidence is admissible. *See Montgomery v. State*, 810 S.W.2d 372, 386, 390 (Tex. Crim. App. 1990). When the trial court weighs the probativeness and prejudice, there is a presumption of admissibility. *Feldman v. State*, 71 S.W.3d 738, 754–55 (Tex. Crim. App. 2002).

### 1. Blanket incident was relevant

To be admissible, the incident must be relevant. TEX. R. EVID. 401. Sanchez argues that the blanket tip episode was not relevant because he was not on trial "for the insert." The State contends evidence that Sanchez previously put a blanket tip into E.S.'s mouth to quiet her cries is relevant to the issue of his intent to harm E.S. *See* TEX. CRIM. PROC. CODE ANN. art. 38.37; *see Prescott v. State* 123 S.W.3d 506, 515 (Tex. App.—San Antonio 2003, no pet.) (upholding conviction for reckless injury to child and determining evidence admissible that defendant recklessly let children wander unsupervised). Evidence of the blanket incident was also relevant to demonstrate Sanchez's relationship with E.S. and his inability to properly deal with her when she cried. *See Burke v. State*, 371 S.W.3d 252, 257–58 (Tex. App.—Houston [1st Dist.] 2011, pet dism'd w.o.j.) (holding that evidence of defendant's previous molestations of complainant was probative of relationship between defendant and complainant). Because this case involved injury to a child, we conclude that evidence of Sanchez's state of mind and previous relationship with E.S. was relevant. *See* TEX. CRIM. PROC. CODE ANN. art. 38.37.

11

## 2.     Probative value outweighs unfair prejudice

We next turn to whether the probative value of this evidence is substantially outweighed by the danger it would have an unfairly prejudicial effect upon the jury. *See Feldman*, 71 S.W.3d at 754–55.

Under the first *Mechler* factor for determining admissibility under Rule 403, the probativeness of the evidence favors the State. The evidence is probative of Sanchez's conduct toward E.S., the nature of their past relationship, his mental state, and his treatment of her. *See Mechler*, 153 S.W.3d at 440; *see Keller v. State*, 818 S.W.2d 425, 429 (Tex. App.—Houston [1st Dist.] 1991, pet. ref'd).

The second factor—the potential the evidence has to impress the jury in some irrational but indelible way—also favors the State. The incident was not violent. The evidence further established Sanchez's state of mind when he committed the charged offense and did not prejudicially distract the jury. *See Price v. State*, 351 S.W.3d 148, 153–154 (Tex. App.—Fort Worth 2011. pet. ref'd) (admitting extraneous evidence of defendant's previous robberies did not distract jury from charged offenses).

The third *Mechler* factor, the time spent in developing the evidence, also favors the State. The State spent relatively little time developing the evidence regarding the blanket incident. *See Mechler*, 153 S.W.3d at 441 (favoring admissibility when developing evidence "would not require an undue amount of

time."). Sanchez provided a brief explanation of his thought processes when he decided to put the blanket into E.S.'s mouth; however, he was not asked to provide additional details. *Id*.

The last *Mechler* factor focuses on the State's need for the evidence. The State had to prove Sanchez's mental state. *See* TEX. PENAL CODE ANN. § 22.04 (requiring proof that injury to child was done "intentionally, knowingly, recklessly, or with criminal negligence."). To prove intent, the State may rely upon circumstantial evidence, including evidence of other relevant bad acts. *See* TEX. CRIM. PROC. CODE ANN. art 38.37 (noting admissible evidence in cases involving injury to child); *see also Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) ("Intent may also be inferred from circumstantial evidence such as acts, words, and the conduct of the appellant."). This factor also favors the State.

In conclusion, the blanket tip evidence was probative, with little danger that it would impress on the jury in some irrational way, took little time to develop, and the State relied on the evidence to show Sanchez's state of mind and his previous relationship with E.S. *See Mechler*, 153 S.W.3d at 440. The danger of prejudicial impact was minimal and did not substantially outweigh the probative value of the evidence. We conclude the trial court did not abuse its discretion in admitting testimony of the blanket incident.

**C.    Sanchez did not preserve error regarding his prior drug use**

Sanchez also argues that the trial court abused its discretion by admitting evidence of his prior marijuana use.

To preserve a complaint for appellate review, a party must make a timely request, objection, or motion with sufficient specificity to apprise the trial court of the complaint and to afford the trial court an opportunity to rule on the objection. TEX. R. APP. P. 33.1(a); *see Saldano v. State,* 70 S.W.3d 873, 886–87 (Tex. Crim. App. 2002); *Pipkin v. State,* 329 S.W.3d 65, 69 (Tex. App.—Houston [14th Dist.] 2010, pet ref'd). Requiring a party to make a complaint to the trial court with a specific and timely objection, request, or motion as a prerequisite for appellate review ensures that the trial court will have an opportunity to prevent or correct errors. *Gillenwaters v. State,* 205 S.W.3d 534, 537 (Tex. Crim. App. 2006); *Pipkin,* 329 S.W.3d at 69. Failure to do so results in waiver of the complaint on appeal. *Gillenwaters*, 205 S.W.3d at 537; *Pipkin*, 329 S.W.3d at 69.

Before Covey testified, the trial court admitted without objection medical records collected by a hospital social worker in which Sanchez reported using marijuana. When Covey was about to testify, however, Sanchez's attorney requested a limiting instruction to preclude the State from asking questions about Sanchez's marijuana use. The trial court denied his request for a limiting instruction. On direct examination by the State, Covey testified that Sanchez used

14

marijuana on a weekly basis. Sanchez later testified that he did use marijuana but not on the day of the incident.

By failing to object to the admission of the medical records and Dr. Girardet's testimony revealing Sanchez's marijuana use, Sanchez waived his right to challenge the admissibility of this evidence on appeal. *See Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) (". . . [O]verruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling.").

Accordingly, we hold that the trial court did not abuse its discretion by admitting evidence of Sanchez's prior bad acts.

We overrule Sanchez's second issue.

**Conclusion**

We affirm.

Harvey Brown
Justice

Panel consists of Justices Jennings, Sharp, and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).