Bobby Dean KISER, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–91–00512–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 9, 1995.

278

Steven R. Rosen, Houston, for appellant.

John B. Holmes, Jr., Carol M. Cameron, Ira Jones, Houston, for appellee.

Before HUTSON–DUNN, ANDELL and PRICE, JJ.

## OPINION

FRANK C. PRICE,* Justice.

A jury convicted appellant of aggravated sexual assault, Tex.Penal Code Ann. § 22.021 (Vernon 1994),[1] and assessed his punishment at 10 years confinement and a fine of $10,000. The jury also found that appellant used or exhibited a deadly weapon—i.e., a knife—during the commission of the offense or during the immediate flight therefrom. In five points of error, appellant contends that the evidence is insufficient to sustain his conviction; and also that the trial court committed reversible error in overruling his objection to evidence of his extraneous misconduct; in overruling his objection to the absence of an instruction in the jury charge on the lesser included offense of aggravated assault; and in denying his two motions for mistrial—one based on improper jury argument by the state, and the other on the state's alleged failure to disclose evidence in accordance with the trial court's discovery order. We affirm.

We review the evidence in the light most favorable to the verdict, to determine whether ány rational trier of fact could have found all the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). This standard of review applies to both direct and circumstantial evidence. *Geesa v. State*, 820 S.W.2d 154, 158, 159 n. 6, 160 n. 8, 161 (Tex.Crim.App.1991);

---

* The Honorable Frank C. Price, former justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

1. The version in effect at the time of the offense was: Act of August 3, 1987, 70th Leg., 2nd C.S., ch. 16, § 1, 1987 Tex.Gen.Laws. 80, 80.

Carlsen v. State, 654 S.W.2d 444, 449 (Tex. Crim.App.1983). We may not act as a thirteenth juror in assessing the evidence. Moreno v. State, 755 S.W.2d 866, 867 (Tex.Crim. App.1988). If there is evidence that establishes guilt, beyond a reasonable doubt, and if the trier of fact believes that evidence, we may not reverse the judgment on sufficiency of the evidence grounds. Id. In this instance, an additional principle of appellate review also applies: to the extent that appellant's conviction rests upon circumstantial evidence, his conviction cannot stand unless the circumstances exclude every other reasonable hypothesis except that of appellant's guilt. Humason v. State, 728 S.W.2d 363, 366 (Tex.Crim.App.1987).[2]

In the light most favorable to the verdict, the evidence shows the following. On the evening of Sunday, March 25, 1990, appellant, his ex-wife Denise,[3] and Denise's best friend, the complainant, went out together to a comedy club and then to a restaurant. Afterward, appellant and Denise dropped the complainant off at her home, then went to pick up their seven-year-old son Bradley from Denise's parents. On the way, appellant and Denise got into an argument about whether she would spend the night with him again that night[1] as she had on the preceding two nights. The argument continued while they were there, and after they left at 11:30 p.m. Appellant pulled the emergency brake, physically grabbed Denise, and started choking her, angry that she refused to sleep with him that night, and he accused her of sleeping with another man. Denise managed to pull into a convenience store parking lot, where she got away, went into the store,

and asked the clerk to call 911. Appellant followed her, and dragged her back outside, where they found that Bradley had locked them out of the car. Soon after, a police officer arrived. As soon as the officer drove up, appellant left and began walking home, which was about a third of a mile away. At Denise's request, the officer followed her to her sister's house. On the way, they passed appellant, who jumped out in front of Denise's car to try to stop her and talk to her. Appellant telephoned Denise at her sister's house just as she arrived there, but she did not want to speak with him.

After Denise hung up on appellant and unplugged her phone, appellant called the complainant, who had already gone to sleep for the night. He was crying uncontrollably, and saying, "I have messed up with Denise. I have really messed up with her this time. You have to help me. Denise is at her sister's and she's taken the phone off the hook. And I have got to talk to her. Would you please go talk to her for me?" The complainant advised appellant to "give her some space" and "just talk to her tomorrow." Appellant kept begging and crying and would not let her go back to bed, so, like Denise, the complainant hung up on appellant and also unplugged her phone, after it immediately began ringing again, over and over.

Later that night, the complainant awoke to find a naked man on top of her, in the dark, choking her. When she could not get his hands off her throat, she grabbed the intruder's testicles as hard as she could. He then grabbed her arm and started hitting her, repeatedly in the face, over and over, until

---

**2.** Although Geesa rejected this reasonable hypothesis legal formula—the so-called "analytical construct"—as a method of appellate review for evidentiary sufficiency in Texas criminal cases, 820 S.W.2d at 161, the court limited the application of the new rules it formulated "to the case at bar and all cases tried hereafter." 820 S.W.2d at 165. The analytical construct therefore is inapplicable to cases tried after November 6, 1991, the date of the Geesa decision. Branch v. State, 833 S.W.2d 242, 244 n. 2 (Tex.App.—Dallas 1992, pet. ref'd); Steward v. State, 830 S.W.2d 771, 774 (Tex.App.—Houston [14th Dist.] 1992, no pet.); Randle v. State, 828 S.W.2d 315, 317 n. 4 (Tex.App.—Austin 1992, no pet.); Fisher v. State, 827 S.W.2d 597, 602 n. 10 (Tex.App.—San Antonio 1992), aff'd, 851 S.W.2d 298 (Tex.Crim.

App.1993). It is to be used in, and only in, cases tried on or before November 6, 1991. Geesa, 820 S.W.2d at 165. Trial of this case took place in May and June of 1991. Accordingly, the reasonable hypothesis analytical construct is to be employed on this appeal.

**3.** Appellant and Denise were first married in 1981, then divorced in 1989. By the time of trial, they had reconciled and resumed living together as husband and wife, but had not formally remarried.

**4.** At this time, Denise was staying with her sister, and appellant was living at the home he and Denise had shared.

she could no longer move. Next, he put a pillowcase over her head, and tied it on with rope, tying her right arm to her neck at the same time. He then tied the complainant's left arm to her left knee with electrical tape. The complainant felt a knife under her right arm, and heard the intruder take a condom out of its package and put it on. She begged for her life; she was afraid to scream because she thought no one would hear her. The intruder then forced her to engage in vaginal intercourse with him, but kept losing his erection. After three or four times, he quit. The complainant heard him in the hallway and the kitchen. He then returned to the bedroom and turned on the light. She was too afraid to turn her face and try to see, through the pillowcase, who it was, because she feared if she recognized him, he would kill her. After a while, the light went out, and he sat on the edge of the bed and laid the knife on her chest, pointed at her throat. Throughout the whole episode, the intruder had never said a word. After a minute or so, he got up. The complainant listened, but never could hear him leave. At length, she could wait no longer, and jumped out of her bedroom window and ran to her neighbor's house, where they called 911 for help. That was about 2:45 a.m. Sheriff's Deputy Ciaramitaro arrived five or 10 minutes later, followed almost immediately by an ambulance, which took the complainant to a hospital.

The investigation that Ciaramitaro and other officers conducted that night and afterward revealed the following circumstances pertinent here: (1) the sliding glass door to the patio was closed and secured, and the sliding screen door was in place when the complainant went to bed after speaking with appellant, but (2) when Ciaramitaro arrived, the sliding screen portion of that door was off its rail and leaning up against the back side of the house and (3) a window was broken; (4) the complainant described the intruder as approximately 6'2" tall and weighing 200 to 220 pounds, and said he had hairy arms and chest, and (5) appellant fit that description; (6) a latent fingerprint, a

right thumbprint, was found on the interior side of the edge of the sliding screen door, approximately one foot above where the handle was, in a position consistent with somebody lifting the screen off the rail from the inside side of the door; and matched a known print taken from appellant; and (7) pubic hair recovered from the complainant's sheets was consistent with a known sample of appellant's pubic hair, matching the sample in all points of a microscopic examination, but (8) was not consistent with a known sample taken from the complainant's boyfriend. Appellant's arrest, prosecution, and conviction, and this appeal, followed.

In his first point of error, appellant contends that the trial court committed reversible error in overruling his objection, made during the guilt-or-innocence phase, to evidence of extraneous misconduct—specifically, the fact that he had grabbed Denise and choked her that night.

■ Appellant's objection to the evidence of the choking incident is not shown in the record. The objection took place during an unrecorded bench conference. The discussion it subsequently generated among the defense, the prosecution, and the trial court was recorded, however. That discussion indicates sufficiently clearly both that one basis for appellant's objection was that the incident was an extraneous offense inadmissible under rule 404(b) of the Texas Rules of Criminal Evidence, and that the trial court overruled that objection. On appeal, the State also directs our attention to the portion of appellant's brief in which appellant discusses the "relevance" of his act of grabbing and choking his wife, and asserts that appellant's point on appeal should be overruled because it does not conform to the rule 404(b) objection he made in the trial court, in violation of TEX.R.APP.P. 52(a). We disagree. That appellant uses the term "relevance" in addressing the evidence in question does not indicate he raises on appeal a new complaint based solely on TEX.R.CRIM.EVID. 401.[5] We hold

---

5. *See, e.g, Gilbert v. State,* 808 S.W.2d 467, 471–72 (Tex.Crim.App.1991):

Evidence of "other crimes, wrongs, or acts" "may … be admissible" if it has *relevance* apart from its tendency "to prove the character of a person in order to show that he acted in conformity therewith." [Citation to rule 404(b) omitted.] … On the other hand, if

that appellant's point of error sufficiently conforms to the objection raised in the trial court.[6]

 Rule 404(b) prohibits the admission of evidence of crimes or wrongs other than the one for which the accused is being tried to prove his character in order to show that he acted in conformity therewith. *Montgomery v. State*, 810 S.W.2d 372, 386 (Tex.Crim. App.1991); TEX.R.CRIM.EVID. 404(b). Rule 404(b) represents a policy decision that that variety of relevance, standing alone, cannot outweigh the prejudicial effect of the evidence. *Montgomery*, 810 S.W.2d at 387. Accordingly, if extraneous offense evidence has no other relevance, then it is absolutely inadmissible. *Id.* Evidence of other crimes or wrongs is to be admitted over a rule 404(b) objection only if it has relevance, under rule 401, apart from its tendency to prove character conformity—as it does, for instance, when it is probative of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Montgomery*, 810 S.W.2d at 386–87; TEX.R.CRIM.EVID. 404(b), 401. There is no requirement that the issue to which the extraneous offense is relevant be one of those set forth in rule 404(b); that listing is not exhaustive. *Montgomery*, 810 S.W.2d at 388. Nor is it required that the issue be disputed or contested; so long as the evidence is probative with respect to any fact of consequence to the determination of the action, whether disputed or undisputed, it is to be admitted over a rule 404(b) objection. *Mayes v. State*, 816 S.W.2d 79, 84 (Tex.Crim. App.1991). To assess the probative value, if any, that extraneous offense evidence has apart from its tendency to prove character conformity, we are to look to (1) the availability of alternative sources of proof, and, more generally, the State's need for the evidence; (2) the closeness in time between the extraneous offense and the charged offense; and

(3) the similarities between the extraneous offense and the charged offense. *Montgomery*, 810 S.W.2d at 392; *Stringer v. State*, 845 S.W.2d 400, 402 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd).

Appellant asserts that, while it is arguable that the substance of the argument between himself and Denise that night might have some bearing on a motive or intent to commit rape,

> the testimony concerning the physical act of grabbing, beating, or choking [Denise] has no such relevance. Such testimony could be sought and offered for no other reason than to show that appellant acted in conformity with his prior conduct in the alleged sexual assault upon [the complainant]. Such evidence, under Rule 404, is inadmissible.

In response, the State argues that evidence of the incident in which appellant grabbed and choked Denise was admissible for five purposes enumerated in rule 404(b): as proof of (1) appellant's identity as the one who sexually assaulted and choked the complainant; (2) intent in sexually assaulting and choking the complainant; (3) opportunity to choke and sexually assault the complainant; and (4) motive to sexually assault and choke the complainant, and (5) state of mind at the time. We consider each of these contentions in turn.

 We begin with the State's identity theory of admissibility. Although the three factors, set forth above, which determine the probative value of extraneous offense evidence may in other instances each be equally important, the third factor is the key factor where evidence of an extraneous offense is offered to show the accused's identity as the perpetrator of a crime: *in such an instance, the extraneous offense and the charged offense must be similar to the point that "the*

extraneous offense evidence is not *"relevant"* apart from supporting an inference of "character conformity," it is absolutely inadmissible under Rule 404(b)[.] (Emphasis added and deleted.)

**6.** *See Montgomery v. State*, 810 S.W.2d 372, 387 (Tex.Crim.App.1991) ("An objection that such evidence [of other crimes, wrongs, or acts] is not

'relevant,' or that it constitutes an 'extraneous offense' or 'extraneous misconduct,' although not as precise as it could be, ought ordinarily to be sufficient under the circumstances to apprise the trial court of the nature of the complaint."); *see also id.* at 377 ("Although not cited in appellant's brief on the merits, appellant attempts to invoke TEX R.CRIM EVID 404(b).").

accused's acts are earmarked as his handiwork; his 'signature' must be apparent from a comparison of circumstances in both cases." *Beets v. State*, 767 S.W.2d 711, 740 (Tex. Crim.App.1987) (op. on reh'g), *cert. denied*, 492 U.S. 912, 109 S.Ct. 3272, 106 L.Ed.2d 579 (1989); *Collazo v. State*, 623 S.W.2d 647, 648 (Tex.Crim.App. [Panel Op.] 1981); *see also Keller v. State*, 818 S.W.2d 425, 429 (Tex. App.—Houston [1st Dist.] 1991, pet. ref'd) (a high degree of similarity is required when an extraneous offense is offered to prove identity). That appellant choked Denise and the perpetrator choked the complainant is not such a similarity that even approaches the requisite level of uniqueness to mark both incidents as appellant's handiwork and make the evidence that he had grabbed Denise and choked her that night admissible to prove his identity as the perpetrator. *See Lazcano v. State*, 836 S.W.2d 654 (Tex.App.—El Paso 1992, pet. ref'd) (evidence of extraneous offense inadmissible to prove identity, intent, motive, or common plan or scheme, where it was similar to charged offense in that both victims were young females who were (1) choked; and (2) sexually assaulted; (3) in the El Paso area; (4) within a six week period; (5) allegedly by Lazcano; (6) after meeting Lazcano at a social gathering).

Next, the State argues that the evidence in question was admissible to prove intent in sexually assaulting and choking the complainant. Here, however, the intent behind sexually assaulting and choking the complainant was readily inferable from the act itself, to which the complainant testified. *Cf. Garcia v. State*, 827 S.W.2d 27, 31 (Tex. App.—Corpus Christi 1992, no pet.) (in prosecution for sexual contact with a child, State had no compelling need to show that appellant, an elementary school teacher, had kissed other students in order to show appellant's specific intent to arouse or gratify his sexual desire because appellant's sexual arousal could be inferred from complainant's testimony that he touched her breasts). The State had no need to present evidence that appellant assaulted and choked Denise, for the purpose of proving the intent behind sexually assaulting and choking the complainant.

The State also argues the evidence at issue here was admissible to prove appellant had opportunity to choke and sexually assault the complainant. The State has cited no authority to indicate that appellant's conduct in choking Denise is probative of his opportunity to choke the complainant later that night, and there is nothing self-evident about any logical connection which may exist between the two. We perceive none.

Finally, the State argues the evidence at issue here was admissible to prove appellant's motive to sexually assault and choke the complainant, and his state of mind at the time.

■ To be admissible as proof of motive, extraneous offense evidence generally must relate or pertain to other acts by the accused against the victim of the charged offense. *See Foy v. State*, 593 S.W.2d 707, 708 (Tex. Crim.App. [Panel Op.] 1980) (same victim; evidence properly admitted to show motive); *Rodriguez v. State*, 486 S.W.2d 355, 356 (Tex. Crim.App.1972) (different victim; error to admit evidence to prove motive); *Page v. State*, 819 S.W.2d 883, 887 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd) (same victim; evidence properly admitted to show motive); *Bevers v. State*, 811 S.W.2d 657, 662 (Tex. App.—Fort Worth 1991, pet. ref'd) (same victim; evidence properly admitted to show motive); *Burton v. State*, 762 S.W.2d 724, 725, 727 (Tex.App.—Houston [1st Dist.] 1988, no pet.) (same victim; evidence properly admitted to show motive, *inter alia*). In this instance, of course, the extraneous offense evidence in question concerned Denise, who was not the victim of the offense of which appellant was convicted.

Appellant does not complain of the admission of evidence concerning the substance of the argument between himself and Denise that night and the events, other than the grabbing and choking, which surrounded that argument. That evidence is probative of a motive to assault complainant, to the extent that that evidence shows, not just that appellant desired to have sex with Denise that night, but also that he had that night an undifferentiated desire for sex with *any* woman—which Denise did not satiate. In turn, to that extent, the State did not need

the evidence that appellant also grabbed and choked Denise in order to show that motive.[7]

Grabbing and choking Denise also tends to show a closely related state of mind, however. It tends to show just how badly appellant wanted sex that night, and the lengths to which he would go that night to get it. The evidence concerning the substance of the argument between himself and Denise that night and the other events surrounding that argument, other than the grabbing and choking, was probative of that same state of mind. None of that other evidence, however, shows as unequivocally as does the evidence that he grabbed and choked Denise, that appellant was so out of control that night that he could actually go so far as to commit a crime to get sex that night. To that extent, the evidence that appellant grabbed and choked Denise had probative value that other evidence available to the State did not. At bottom, however, we see no rational way to distinguish proof of such a "state of mind" from the proof that rule 404(b) prohibits. The proof of character conformity forbidden by the rule is, of course, equivalently, proof of "propensity for committing crimes generally" or "propensity to commit the offense charged." *See Owens v. State,* 827 S.W.2d 911, 914 (Tex. Crim.App.1992) *and Robinson v. State,* 844 S.W.2d 925, 928 (Tex.App.–Houston [1st Dist.] 1992, no pet.) (using those terms as synonyms for "bad character").

We hold that evidence of the incident in which appellant grabbed and choked Denise was not admissible on any of the foregoing five theories relied upon by the State. There is one additional theory which the State urges upon us here that remains to be considered.

Even where extraneous offense evidence is not probative with respect to any fact of consequence to the determination of an action, it may still be relevant, and therefore admissible, if it creates a context from which the fact finder may more ably make judgments about those other facts which are of consequence to the determination of the action. *Mayes,* 816 S.W.2d at 85. The term "res gestae," used in the past to refer to contextual evidence, has come to subsume two different varieties of such evidence, and thus to obscure the distinction between them; those two varieties are (a) other offenses indivisibly connected with the offense charged, and (b) other, general background evidence helpful to the jurors' understanding of events at issue in the case before them. *Id.* at 86. When reviewing the admission of evidence as contextual evidence, the preferred approach is now to distinguish between these two different varieties of contextual evidence by referring to the former as same transaction contextual evidence and to the latter as background contextual evidence. *See id.* at 86–87. Character evidence may not be admitted as background contextual evidence. *Id.* at 88. Character evidence may, however, be admissible as same transaction contextual evidence. *Lockhart v. State,* 847 S.W.2d 568, 570 (Tex.Crim.App. 1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 146, 126 L.Ed.2d 108 (1993); *see also Mayes,* 816 S.W.2d at 87.

Here, the State contends that evidence of the incident in which appellant grabbed and choked Denise was also admissible because it was same transaction contextual evidence indivisibly connected with the offense charged. We perceive no such connection inseparably linking the two. The two, while not remote in time and place from each other, did not occur as part of an unbroken series of intermixed events. The choking incident, the episode at the convenience store, the drive back to Denise's sister's house, and the two phone calls were, arguably, part of an unbroken series of intermixed events. That unbroken series of events ended when the complainant hung up on appellant. There is no evidence of any events occurring thereafter to link that first series of events with the series of events that began when the complainant woke up and confronted the intruder assaulting her in her bedroom. The sexual assault on the complainant began a separate unbroken series of intermixed events, linked to the

7. We note also that motive is not an essential element of a criminal offense. Therefore, motive need not be proved to establish the commission of the offense. Evidence to show motive is merely one kind of evidence aiding in establishing proof of an alleged offense. *Rodriguez,* 486 S.W.2d at 358.

first, so far as the record reveals, only by some degree of proximity. The two series of events can be said to be "intermixed" only by assuming that appellant was involved in both. Nothing else about the two sequences links them to each other. To make that assumption, however, would improperly alleviate the State's burden of proof on the very question which, on our reading of the record, was the only issue seriously in dispute at trial—namely, whether appellant and the intruder who assaulted the complainant were one and the same person. Manifestly, the State may not, in its effort to meet its burden, use evidence which only becomes admissible by assuming the fact the State is required to prove.

■ Even assuming, *arguendo,* that evidence of the incident in which appellant grabbed and choked Denise genuinely was, with respect to the sexual assault on complainant, same transaction contextual evidence, it nevertheless remains inadmissible. Same transaction contextual evidence is admissible as an exception under rule 404(b) only where it is necessary to the jury's understanding of the offense charged—i.e, only where the evidence of the facts and circumstances of the charged offense would make little or no sense without also bringing in the same transaction contextual evidence. *Rogers v. State,* 853 S.W.2d 29, 33 (Tex.Crim. App.1993). Here, it would not have been impracticable to describe the argument between appellant and Denise and its subject matter and the magnitude of appellant's state of agitation that night, while omitting any specific description of appellant's choking or grabbing Denise. With that omission, the remaining events still present a coherent account that would have made sense to the jury.

None of the State's theories of admissibility of the extraneous offense evidence supports its admission; and we perceive no other valid basis for its admission. Overruling appellant's objection and admitting evidence of the choking incident was error. There remains the question, however, of whether admitting that evidence was reversible error.

■ In conducting a harm analysis, an appellate court is obligated to examine the entire record in a neutral, impartial, and even-handed manner" and to "calculate as much as possible the probable impact of the error on the jury in light of the existence of the other evidence." *Harris v. State,* 790 S.W.2d 568, 586, 587 (Tex.Crim.App.1989). We are to consider the following factors in that analysis: (1) the source and nature of the error; (2) whether or to what extent it was emphasized by the State; (3) the probable collateral implications of the error; (4) the weight the jurors would probably place on the error; and (5) whether declaring the error harmless would encourage the State to repeat it with impunity. *Id.* The weight of the other evidence of guilt can also be a factor to be considered. *Id.* at 588. However, a reviewing court

> should focus not on the weight of the other evidence of guilt, but rather on whether the error at issue might possibly have prejudiced the jurors' decision-making; it should ask not whether the jury reached the correct result, but rather whether the jurors were able properly to apply law to facts in order to reach a verdict. Consequently, the reviewing court must focus upon the process and not on the result.... [A] reviewing court must always examine whether the trial was an essentially fair one. If the error was of a magnitude that it disrupted the juror's orderly evaluation of the evidence, no matter how overwhelming it might have been, then the conviction is tainted.

*Id.* at 587–88.

■ The State was the source of the error here, and the nature of the error was the admission of inadmissible character conformity evidence over timely objection.

The State did draw the jurors' attention to that inadmissible evidence during its closing argument, but did not strongly emphasize that evidence. After reviewing many other items of evidence and contending that the defense's arguments were diversions, the State brought up the "fight" between appellant and Denise, and made mention that appellant had grabbed her around the neck and choked her. The State then argued at some length that the fight *as a whole* showed that

appellant was "out of control" and that that state, in turn, led him to assault the complainant. Approximately in the middle of its closing, the State utilized that inadmissible evidence in an apparent effort to argue that it was probative of appellant's identity as the perpetrator; the prosecutor said, "In this case, you know the defendant choked his wife that night. The first thing he did was choke his wife, and the first thing he does with [the complainant], is put his hands on her throat." The State then immediately turned to addressing other evidence having nothing to do with the fight between appellant and Denise. Toward the end of its argument, the State did implore the jury, "You know that the defendant committed that offense; you know, based on *everything that happened that night* and based on the physical evidence that you have, that the defendant is the one who did this." (Emphasis added.) The State did not, however, in the balance of its argument, again make any specific mention of either the choking in particular or of the fight.

Turning to the probable collateral implications of the inadmissible evidence and the weight the jurors would probably place on it, we find it likely that the inadmissible evidence carried little if any additional weight alongside the fingerprint evidence on the issue of identity—which, again, on our reading of the record, was the only issue seriously in dispute at trial. We perceive no collateral implications that would alter that assessment. We believe the impact of the inadmissible evidence on the jurors was not so great as to impair their orderly evaluation of the evidence and application of the law to the facts.

Finally, we address whether declaring the error in question harmless would encourage the State to repeat it. We believe that holding this error harmless would indeed tend to have that effect. We perceive in this record a degree of prosecutorial fervor which indicates the wisdom of the concern that, in the words of one of our sister courts of appeals, "holding such error harmless ... could be interpreted as a signal to even the most well-

intentioned prosecutor that ... any alleged perpetrator of ... a repulsively violent crime deserves to be prosecuted as aggressively as the 'law allows.'"[8] Like our sister court, we in no way attempt to impugn the integrity of Texas prosecutors generally. Nor do we direct any such attempt toward these prosecutors in particular. If, however, the State has been led here to introduce evidence that the alleged perpetrator previously choked someone else other than the victim by the possibility that such evidence—though clearly inadmissible, after *Lazcano,* in circumstances like these to prove identity—might in such an instance still be admissible for one of the other purposes the State has relied upon here, then we cannot say that holding this error harmless today would indeed have the effect of encouraging the State to repeat it. We believe, however, that after our decision today, a recurrence of the same error would, absent some overriding circumstance, warrant a different conclusion on this factor and, likely, also change the denouement on the larger question of harmlessness.

We find beyond a reasonable doubt that the error in admitting the evidence complained of made no contribution to the conviction.

At the punishment phase of appellant's trial, the State presented, at significantly greater length and in significantly greater detail than at the guilt-or-innocence phase, additional evidence concerning the extraneous choking incident. Appellant does not complain of the admission of that additional evidence and, in any event, admissibility of character evidence at the punishment phase is governed not by rule 404(b), but instead by subdivision (c) of rule 404, which provides that evidence of the accused's character may at that phase be offered freely either by the accused or by the prosecution. TEX.R.CRIM. EVID. 404(c). The range of punishment was from a minimum of five years in prison to a maximum of 99 years or life, plus a fine of up to $10,000, and appellant had filed a motion for probation. The State argued for life in prison, and the jurors instead assessed appel-

8. *Bishop v. State,* 837 S.W.2d 431, 436–37 (Tex. App.—Beaumont 1992), *aff'd,* 869 S.W.2d 342 (Tex.Crim.App.1993).

lant's punishment at 10 years in prison and a fine of $10,000, without recommending probation of either the prison term or the fine. In light of the admission of the additional evidence concerning the extraneous choking incident at the punishment phase, and the jurors' departure from the State's recommendation, we find beyond a reasonable doubt that the error in admitting some evidence concerning the extraneous choking incident at the guilt-or-innocence phase made no contribution to the punishment.

Point of error one is overruled.

In his second point of error, appellant contends that the evidence is insufficient to sustain his conviction.

Here, appellant's right thumbprint was found on the interior side of the screen door to complainant's house.

Fingerprint evidence alone is sufficient to sustain a conviction if the record shows that the fingerprints were necessarily made contemporaneously with the offense. *Phelps v. State*, 594 S.W.2d 434, 435 (Tex. Crim.App. [Panel Op.] 1980). Even where, as here, the *Geesa* "analytical construct" is employed, the mere possibility that an accused's fingerprints may have been left at some time other than at or near the time of the crime does not necessarily render the evidence insufficient; in particular, highly unlikely possibilities that could account for the presence of the accused's fingerprints in a manner consistent with his innocence do not render the evidence insufficient. *Id.* at 436. The test is whether a rational trier of fact could determine, beyond a reasonable doubt, that the fingerprint was made at the time of the crime by the one who committed the crime. *Jones v. State*, 825 S.W.2d 529, 531 (Tex.App.—Fort Worth 1992, pet. ref'd). Here, the sliding screen door at the back of the complainant's house had been removed from its railing contemporaneously with the assault. Although appellant had been to the complainant's home twice before the assault, she testified he had not, on either of those occasions, had access to, or been near the screen door, and he had never been in her backyard. The jury was permitted to conclude that appellant's fingerprint was necessarily left on the screen door at or near the

time of the crime, and, in turn, that appellant had lifted the screen off its rail, in an attempt to get inside the complainant's house; had later found his way in by breaking a window; and had then sexually assaulted the complainant. That fingerprint was compelling evidence of appellant's identity as the one who sexually assaulted the complainant. We hold that the fingerprint and the other facts and circumstances set forth above were sufficient proof of appellant's identity as the one who sexually assaulted the complainant to sustain his conviction.

Point of error two is overruled.

The discussion of the remaining points of error does not meet the criteria for publication, TEX.R.APP.P. 90, and is thus ordered not published.

We affirm the judgment of the trial court.

