Opinion issued February 13, 2003 











  




In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-01-00804-CR
____________
 
ALEX WAYNE GRACE, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 262nd District Court
Harris County, Texas
Trial Court Cause No. 862193
 

 
MEMORANDUM OPINION 
          A jury found appellant, Alex Wayne Grace, guilty of the felony offense of
aggravated robbery, and, after finding two enhancement paragraphs true, assessed
punishment at life. In one point of error, appellant argues the trial court improperly
admitted extraneous offense testimony of aggravated robberies in the guilt/innocence
phase of the trial. We affirm.
Background
          At approximately 10:30 a.m. on November 27, 2000, Krystal Grigsby, an
employee of the Cash America Pawn Shop on West Mount Houston, saw a car pass
in front of the shop twice before a black male got out of the passenger side and
entered the pawn shop smiling. The man was wearing a blue, long-sleeved baseball
shirt, blue jeans, blue shoes, a dark ball hat, black leather gloves, and dark sunglasses. 
Grigsby testified the man was carrying what appeared to be a bag for a laptop
computer. The man pulled out a 9 millimeter handgun and demanded that the video
surveillance tapes, money, jewelry, and guns be placed in the laptop bag. Steve
Burnside, the pawn shop manager, testified that while he was emptying his cash
register, the robber asked, “Do you think I’m kidding? Do you think I’m new at
this?” When the bag was full, the employees started to fill plastic grocery bags and
then a plastic trash can. The assailant looked through the money in the bag and
removed the dye packs. He ordered everyone in the store on the ground, took another
employee’s car keys, and demanded Grigsby go outside with him. Grigsby testified
that, while outside, it looked as if a car was going to pull into the parking lot, so the
man put the gun down the front of his pants. The gun accidentally discharged, and
Grisby noticed smoke coming out around the man’s ankles. The assailant waited for
Grisby to return to the shop, and then drove away in the employee’s car.
          Detective Tom Keen from the Harris County Sheriff’s Department was notified
on the afternoon of the robbery that a man was admitted to the Northwest Medical
Center Hospital with a gunshot to the groin. The man claimed to have been assaulted
while attempting to go to the bathroom behind a gas station. Keen testified that he
“didn’t feel it was a viable story.” He got the man’s name and created a photospread
with pictures from five other people.
          The next day, Grigsby met with Detective Keen, looked at the photo spread,
and identified appellant as the person who robbed the pawn shop. Grigsby testified
she was “very sure” she correctly identified the person who robbed the shop. Steve
Burnside, the pawn shop manager, tentatively identified two suspects, but later
identified appellant from a videotaped lineup. Corrina Gallegos, another employee
at the pawn shop, identified appellant from a videotaped lineup. 
          The sole issue at trial was identity. Evidence of three extraneous offenses,
including one armed robbery of a nail salon (Vuha Nail Salon on August 26, 2000)
and two armed robberies of pawn shops (EZ Pawn on September 9, 2000 and EZ
Pawn on October 11, 2000), was admitted during the guilt/innocence stage of the
trial.
                                                 Extraneous Offense 
          In his sole point of error, appellant argues the trial court committed reversible
error in the guilt/innocence phase of the trial, by allowing the state to introduce
evidence of three extraneous aggravated robberies in order to show identity.
          Although relevant, evidence of other crimes, wrongs, or acts is not admissible
to prove the character of a person in order to show he acted in conformity therewith.
Tex. R. Evid. 404(b). However, an extraneous offense may be admissible if it has
relevance apart from its tendency to prove character conformity. Id.; Montgomery v.
State, 810 S.W.2d 372, 387 (Tex. Crim. App. 1990). We review an admission of
evidence under a rule 404(b) objection for abuse of discretion. Lane v. State, 933
S.W.2d 504, 519 (Tex. Crim. App. 1996). 
          Evidence of other crimes may be admissible for such purposes as proof of
motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of
mistake or accident. Tex. R. Evid. 404(b). An extraneous offense may be admissible
to show identity only when identity is an issue in the case. Lane, 933 S.W.2d at 519. 
When evidence of an extraneous offense is offered to show the defendant’s identity
as the perpetrator of the crime, the extraneous offense and the charged offense must
be similar to the point that the defendant’s “acts are earmarked as his handiwork.” 
Id.; see also, Kiser v. State, 893 S.W.2d 277, 282 (Tex. App.—Houston [1st Dist.]
1995, pet. ref’d). The accused’s “signature” must be apparent from a comparison of
circumstances in all cases. Kiser, 893 S.W.2d at 282. 
          Evidence admitted for the purpose of proving identity must demonstrate a
much higher degree of similarity to the charged offense than extraneous acts offered
for other purposes such as intent. Bishop v. State, 869 S.W.2d 342, 346 (Tex. Crim.
App. 1993). Without such similarity, the probative value of such evidence would be
substantially outweighed by its prejudicial effect. Id. “To assess the probative value,
if any, that extraneous offense evidence has apart from its tendency to prove character
conformity, we are to look to (1) the availability of alternative sources of proof, and,
more generally, the State’s need for the evidence; (2) the closeness in time between
the extraneous offense and the charged offense; and (3) the similarities between the
extraneous offense and the charged offense.” Kiser, 893 S.W.2d at 281. The third
factor (similarities between the extraneous offense and the charged offense) is the
most important of the three factors. Id. Furthermore, sufficient similarity may be
demonstrated “by proximity in time and place or by a common mode of committing
the offenses.” Lane, 933 S.W.2d at 519.
          Here, the State argued the defense opened the door for extraneous offense
testimony when his cross-examination of the State’s witnesses dealt largely with the
ability of the witnesses to properly identify appellant.
Three Extraneous Robberies
          Officer John Villareal, a Houston Police Department robbery investigator,
testified that he was investigating a series of cases pertaining to robberies at
pawnshops, cleaners, and beauty shops in which the suspect matched appellant’s
description. Villareal testified about three of the aggravated robberies in which
appellant was a suspect. 
          1. Vuha Nail Salon on August 26, 2000
          On August 26th, 2000 an aggravated robbery took place at the Vuha Nail Salon
on 1433 West Mount Houston Road. Stacia Wilson, a customer in the salon, testified
that a black male entered the salon wearing a baseball cap and wide sunglasses and
carrying a gun. The robber raised his shirt, pulled out a black, semiautomatic pistol,
ordered everyone to the back of the store, and told them to count to 100. The
assailant pulled out a trash bag and demanded everyone’s money and jewelry. 
          Wilson and Gina Ulmer, other customers, identified appellant as the robber
from the salon. Wilson testified that the nail salon is located within two to three
minutes of the Cash America Pawn Shop. Officer Villareal testified that the suspect
was brandishing a black handgun with tape around the handle.
 
          2. EZ Pawn on September 9, 2000
          Officer Villareal investigated a robbery that took place at EZ Pawn on 5100
North Shepard Drive on September 9, 2000, two months before the robbery at issue. 
In the September robbery, a black male carrying a hammer and a pistol was wearing
clothing, sunglasses, and gloves similar to those described in the other pawnshop
robberies. 
          Pamela Sanchez, an employee, identified the robber as the appellant in a video
taped lineup. Sanchez testified that the appellant wore a baseball cap and sheer
pantyhose over part of his face. Appellant demanded money and jewelry. Appellant
did not ask for surveillance tapes; he stuffed money in his pockets; and he did not
take a car. 
          Officer Villareal testified that there were similarities between this robbery and
the case at issue. There was a hammer and weapon used, and the robber’s clothing,
glasses, and gloves were similar. Furthermore, all three pawnshop robberies occurred
in the north part of town within four or five minutes from appellant’s home. 
          Officer Villareal testified that, when he is attempting to determine if robberies
are related, he considers the locations of the robberies. These pawn shop robberies
were in close proximity to each other. There were no shots fired during this robbery. 
However, Villareal testified that there were “absolutely” some actions on the video
surveillance that made him suspect appellant for all the robberies.
          3. EZ Pawn on October 4, 2000
          Officer Villareal testified that at 10:54 a.m. on October 4, 2000 in the 7500
block of Airline Drive at EZ Pawn, a black male entered the store carrying a hammer
and a pistol and demanded that the employees put money and jewelry in a bag. The
robber was wearing a ball cap and some sunglasses, and he had gloves on. He was
carrying a revolver with tape on the handle. Lucas Mata, the store manager identified
appellant as the robber. Mata recognized appellant because he had come in the store
15 minutes before the robbery wanting to pawn a hammer for five dollars. 
          Appellant told everyone in the store to get on the floor and, when nobody
followed his instructions, he fired a shot and the bullet grazed the arm of Audrey
Hodges, a customer. Appellant said that he wanted all of the money, surveillance
tapes, and jewelry. Appellant removed the dye pack from the money. When the bag
was full of money and jewelry, appellant grabbed a plastic trash can and had the
employees fill it with the property. As he was leaving, appellant took Audrey
Hodges’s car keys, and, as he tried to lift the trash can to take it to Hodges’s car, the
gun fired two times. Appellant then made Hodges move her car to the front of the
store and ordered her husband to carry the trash can to the car. While in Hodges’s
car, a dye pack went off, and appellant demanded another car. No other car was
available so he drove off. 
          On November 30, 2000, Mata, and Sindy Gomez, a pawn shop employee,
identified appellant out of a lineup. Officer Villareal testified this robbery was
similar to the one at issue because the robber wore a hat, sunglasses, and gloves and
carried a hammer and a weapon. 
Similarities
          We hold the trial court did not abuse its discretion when it found sufficient
similarities between the Cash America Pawn Shop robbery and the three extraneous
offenses. We overrule appellant’s sole point of error.
Conclusion
          We affirm the judgment of the trial court.
 
                                                                        George C. Hanks, Jr.
                                                                        Justice
 
Panel consists of Chief Justice Radack and Justices Nuchia and Hanks.
 
Do not publish. Tex. R. App. P. 47.2(b).