

# NUMBER 13-12-00377-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ALLEN PENA A/K/A
ALAN PENA,                                                    Appellant,

v.

THE STATE OF TEXAS,                                          Appellee.

## On appeal from the 319th District Court
## of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Garza and Perkes
### Memorandum Opinion by Justice Garza

Appellant, Allen Pena a/k/a Alan Pena, was convicted of evading arrest or detention using a vehicle, a third-degree felony. *See* TEX. PENAL CODE ANN. § 38.04(b)(2)(A) (West Supp. 2011). The offense was enhanced to a second-degree felony upon the jury's finding that Pena had previously been convicted of a felony. *See id.* § 12.42(a) (West Supp. 2011). Pena was sentenced to ten years' imprisonment. On

appeal, he contends that: (1) the evidence was insufficient to show that the attempted arrest or detention was lawful; (2) the trial court erred by denying his request for mistrial when a lay witness testified as to fingerprint identification; (3) the trial court erred by admitting testimony from an earlier trial; and (4) the trial court erred by admitting a "pen packet" into evidence. We affirm.

## I. BACKGROUND

In the early morning hours of October 5, 2011, Officer Thomas Nichols of the Corpus Christi Police Department received a radio call alerting him to be on the lookout for a silver/grey, four-door 2002 Honda vehicle. At around 4:30 a.m., he observed a vehicle matching that description parked in a well-lit area near a convenience store. Officer Nichols drove by the vehicle and saw the driver inside. According to Officer Nichols, the driver met the description of the suspect that had been transmitted over the radio. The officer drove around behind the vehicle, got out of his unit, and approached the vehicle. He was in full police uniform, although his unit's emergency lights and siren were not on. As he approached the vehicle, Officer Nichols yelled: "Show me your hands." The suspect accelerated and drove away.

Officer Nichols returned to his unit, activated its emergency lights and siren, and pursued the vehicle. The chase continued at a high rate of speed through residential neighborhoods and busy intersections. Eventually, the suspect struck a concrete bench, disabling the vehicle. The officer again ordered the suspect to show his hands, but the suspect "turned around and took off running." Having been advised by dispatch that the suspect was armed, Officer Nichols held his position until backup arrived. In the meantime, he looked inside the disabled vehicle and saw a gun wedged between the driver's seat and the door. Other officers were later able to apprehend the suspect,

2

who was identified as Pena.

Pena was charged with evading arrest or detention using a vehicle and with unlawful possession of a firearm. *See id.* §§ 38.04, 46.04 (West 2011). At trial, Officer Nichols recounted the events of October 5, 2011. He identified Pena as the man he saw and pursued that night.

Following Officer Nichols's testimony, the prosecutor offered into evidence State's Exhibit 3, an excerpt from a transcript of Pena's testimony from an earlier aggravated robbery trial. The trial court admitted the evidence over defense counsel's objection and the prosecutor read the entire transcript excerpt aloud to the jury. In the statement, Pena states that he "saw the police sirens going" and "sped up because I got nervous because I was—I was drinking, and I didn't want to get a ticket for DWI, so I sped up and tried to get away." Pena agreed that he was intoxicated and was "doing about a hundred miles an hour" but insisted that "there was nobody on the road" and he was "very cautious."

Scott Herrington, a Corpus Christi Police Department crime scene investigator, testified that he reported to the scene to examine the damaged vehicle. He stated that he recovered the gun in the vehicle and processed it for latent fingerprints.[1] He agreed with the prosecutor that it is very common "not to get usable prints" off of items that have been processed for fingerprints. On cross-examination, Herrington acknowledged that the only fingerprints he submitted for analysis were taken from the vehicle itself, not the gun found inside the vehicle. Defense counsel asked Herrington whether he had

---

[1] When asked if he has training in fingerprint collection, Herrington stated: "As a part of my normal every day duties, processing the scene for fingerprints, processing items removed from the scene, yes, that's part of my daily job." He further stated: "I don't actually do a comparison against known offenders to items or prints lifted from the scene. That's submitted to a latent examiner. But I do remove them to that portion of the forensics division."

3

previously suggested that "the process of picking up fingerprints is flawed." In response, Herrington stated: "Well, actually the process of picking up fingerprints depends on several scenarios. In this particular case I did process the vehicle, and those prints came back to your client." Defense counsel objected to Herrington's testimony and moved for a mistrial on grounds that Herrington is not qualified to give expert testimony regarding fingerprint comparison. The trial court sustained the objection but denied the motion for mistrial.

The jury was charged only on the evading arrest with a vehicle charge. It found Pena guilty of that offense and also found that Pena had previously been convicted of felony family violence assault, a third-degree felony, in 2009. *See id.* § 22.01(b)(2) (West 2011). This appeal followed.

## II. DISCUSSION

### A. Evidentiary Sufficiency

By his first issue, Pena argues that the evidence was insufficient to prove that the attempted detention was lawful.

In reviewing the sufficiency of evidence to support a conviction, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318-19). When faced with

4

conflicting evidence, we presume that the trier of fact resolved any such conflict in favor of the prosecution, and we defer to that resolution. *State v. Turro*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* Here, a hypothetically correct jury charge would state that Pena is guilty of evading arrest or detention using a vehicle if he: (1) intentionally fled from (2) a person he knew to be a peace officer (3) attempting lawfully to arrest or detain him, and (4) he used a vehicle while in flight. *See* TEX. PENAL CODE ANN. § 38.04(a), (b)(2)(A).

Pena does not dispute the sufficiency of the evidence showing that he intentionally fled, that he used a vehicle to do so, that he knew Officer Nichols was a peace officer, or that he knew Officer Nichols was attempting to arrest or detain him. Pena only argues that the evidence was insufficient to support the jury's implicit finding that Officer Nichols's attempt to detain him was lawful. In particular, Pena contends that the only evidence in the record as to this element is the officer's testimony that he received a radio call alerting officers to be on the lookout for a particular vehicle and a particular suspect. Pena does not dispute that he and his vehicle matched the descriptions relayed to Officer Nichols. He contends, though, that "[t]here was nothing in the record to suggest the police had a valid reason for suspecting criminal activity was associated with the vehicle or the driver."

5

In response, the State does not contend that Officer Nichols had reasonable suspicion to detain Pena at the time he initially approached Pena's vehicle. Instead, the State argues that the officer "clearly obtained reasonable suspicion to detain, as well as probable cause to arrest, when Pena fled from him and committed numerous traffic offenses before finally being caught." The State urges that, "[b]ecause Pena continued his vehicular evasion even after Officer Nichols observed these violations, that continued flight amounted to evading a lawful arrest or detention using a vehicle." The State's position, in other words, is that a conviction for evading arrest may theoretically be based on actions taken by a defendant in response to an officer's *unlawful* attempt to arrest or detain the defendant, as long as the defendant's evasive actions are *themselves* offenses which give rise to lawful grounds for detention or arrest.

We agree with the State. It is true, as Pena notes, that the record contains no evidence establishing why police radio alerted officers to be on the lookout for Pena and his Honda.[2] But even assuming that Officer Nichols lacked reasonable suspicion to detain Pena at the time he first approached the vehicle, he clearly had probable cause to arrest when he observed Pena violate numerous traffic laws. *See* TEX. CODE CRIM. PROC. ANN. art. 14.01(b) (West 2005) ("A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view."); TEX. TRANSP. CODE ANN. § 542.301 (West 2011) (stating that failure to comply with traffic laws is a misdemeanor); *id.* § 544.004(a) (West 2011) (generally requiring vehicle operators to comply with all applicable official traffic-control devices). Therefore, Officer Nichols was

_____

[2] No witness testified as to any reason why police were ordered to be on the lookout for Pena and his vehicle. In any event, we do not decide the question of whether the police radio's instruction to be on the lookout, without further elaboration, gave Officer Nichols reasonable suspicion to detain or probable cause to arrest Pena. We merely hold, as stated herein, that Pena's actions following the officer's initial approach gave the officer grounds for lawful arrest.

attempting to effectuate a lawful arrest, and Pena was intentionally evading a lawful arrest, at least from the point that Pena began to commit violations of traffic laws in full view of the officer.[3]

Pena's first issue is overruled.

## B.    Motion for Mistrial

By his second issue, Pena argues that the trial court erred in denying his motion for mistrial following Herrington's testimony on cross-examination regarding the results of a fingerprint analysis.   After Herrington made the challenged statement—"In this particular case I did process the vehicle, and those prints came back to your client"— defense counsel objected on the basis that Herrington is not qualified and asked the trial court to strike the testimony.  The trial court sustained the objection and instructed the jury to disregard the statement.   The trial court then denied defense counsel's motion for mistrial.

A mistrial is an extreme remedy, and "[o]nly in extreme circumstances, where the prejudice is incurable, will mistrial be required."  *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) (en banc).   "A mistrial is the trial court's remedy for improper conduct that is 'so prejudicial that expenditure of further time and expense would be wasteful or futile.'"  *Id.* (quoting *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)).   Mistrial is appropriate when "the objectionable events 'are so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant.'"  *Archie v. State*, 340 S.W.3d 734, 739 (Tex. Crim. App. 2011) (quoting *Young v. State*, 137 S.W.3d 65, 71 (Tex. Crim. App. 2004)).

---

[3] We note that, if Pena believed at the time that Officer Nichols had no lawful basis to detain him, Pena could have remained in his car when he was initially approached by the officer.  Alternatively, Pena could have simply driven away in a lawful manner.  Instead, he led Officer Nichols on a high-speed pursuit through a populated area.

Otherwise, where the prejudice is curable, an instruction to disregard will eliminate the need for a mistrial. *Young*, 137 S.W.3d at 69. We review the denial of a motion for mistrial under an abuse of discretion standard. *Id.* at 738–39 (citing *Hawkins*, 135 S.W.3d at 77).

Pena argues that "[f]ingerprint identification [is] powerful, persuasive evidence to a trier of fact," *see Kiser v. State*, 893 S.W.2d 277, 286 (Tex. App.—Houston 1st Dist. 1995, pet. ref'd) ("Fingerprint evidence alone is sufficient to sustain a conviction if the record shows that the fingerprints were necessarily made contemporaneously with the offense."), and that the trial court's instruction to disregard Herrington's statement was therefore insufficient to prevent unfair prejudice. We disagree. There was abundant evidence, including that of Officer Nichols and Pena himself, establishing that Pena was the individual who fled from Officer Nichols. There was no evidence at trial suggesting that someone other than Pena was the driver of the vehicle. Defense counsel did not suggest in his opening or closing arguments that Pena had been misidentified; rather, he argued that Pena may not have known that he was being followed by a law enforcement officer. Under the circumstances of this case, we find that the trial court's curative instruction eliminated any need for a mistrial. *See Young*, 137 S.W.3d at 69.

Because the trial court did not abuse its discretion, Pena's second issue is overruled.

## C. Admission of Evidence

Pena's final two issues challenge the trial court's admission of certain evidence. We review evidentiary rulings for abuse of discretion. *Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007). The trial court abuses its discretion only when its decision lies "outside the zone of reasonable disagreement." *Id.*

8

By his third issue, Pena argues that the trial court erred by admitting State's Exhibit 3, Pena's prior testimony, which included a reference by Pena to a possible illegal drug transaction.[4] Pena asserts that "there was no evidence of a possible drug

[4] The exhibit, a partially-redacted transcript excerpt, states in its entirety as follows:

Q. Okay. And your intent was to do [sic] arrived at that location?

A. Was to get Ant drugs.

Q. Okay. So after you meet with him, what happens next?

A. Well, we meet up and he tells me he don't have too much money on him and he wants cocaine. And—and he tries telling me that he has the currency, whatever, the foreign currency money and he has a gun to trade to make up for the rest of the money. And that if I wanted to, that he would give me my money back later and I would give him his foreign currency money back, so I was just holding on to his foreign currency money for him.

THE COURT:    [Prosecutor].

CROSS-EXAMINATION

BY [Prosecutor]:

Q. You said you were pulling over from the police when they stopped you?

A. No, I didn't say that, [prosecutor].

Q. What did you say then?

A. Let me correct you. I said that when I saw the police sirens going.

Q. Yeah.

A. That I sped up because I got nervous because I was—I was drinking and I didn't want to get a ticket for DWI, so I sped up and tried to get away.

Q. You didn't mind if you caused an accident or killed somebody?

A. Oh, there was nobody on the road. There was nobody. I was—I was—I may have been speeding but I was very—I was very cautious, like making sure.

Q. So you were doing about a hundred miles an hour?

A. Huh?

Q. You were doing about a hundred miles and [sic] hour?

A. Oh, yeah, well, there's people that drive faster than that at NASCAR.

Q. Okay. But you say you've been drinking all night and didn't want to get pulled over for a DWI, right?

9

deal to any issue involved in the trial. As such, there was no rationale for the admission of the testimony, which was prejudicial in subjecting the jury to hearing [Pena] had possibly engaged in illegal conduct . . . ."[5] He contends that the evidence was irrelevant and prejudicial. *See* TEX. R. EVID. 403 (""Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."); TEX. R. EVID. 404(b) ("Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other

---

A. Yeah.

Q. Were you drunk?

A. Well, I was drinking.

Q. Were you drunk?

A. You can say I was intoxicated. I couldn't say [sic] was drunk, but I couldn't pull over—

Q. And you're being cautious, doing a hundred miles an hour, running through red lights and intersections, and you're being cautious?

A. Well, there was nobody out there at that hour.

Q. And you knew that before you went through those intersections?

A. Well, I'm pretty sure because I checked real quick. You know, I'm—I'm not blind. I can see.

[Page redacted]

A. As a matter of fact, I told him to keep the gun on him. And then that we would work something out later.

[5] Pena does not appear to argue that the portions of his earlier testimony regarding his fleeing from police were inadmissible. Insofar as he does make that argument, we note that the testimony was indisputably relevant and, while it was prejudicial to Pena, it was not *unfairly* prejudicial. *See* TEX. R. EVID. 403; *Robbins v. State*, 88 S.W.3d 256, 263 (Tex. Crim. App. 2002) (acknowledging that prejudicial testimony need not be "unfairly prejudicial" under rule 403).

purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .").

The State notes that the transcript excerpt was offered to prove Pena's knowledge that there was a gun in his car in order to establish that Pena was guilty of unlawful firearm possession. The State argues that the evidence was relevant with respect to the evading arrest charge because it showed that Pena may have had drugs in his car and that this may have been a motive for his evading police.

Assuming, but not deciding, that admission of this portion of testimony was erroneous, we find that such error would not be reversible. Rule 44.2(b) of the Texas Rules of Appellate Procedure prescribes the harm analysis for error stemming from the erroneous admission of extraneous offense evidence. *Reyes v. State*, 69 S.W.3d 725, 742 (Tex. App.—Corpus Christi 2002, pet. ref'd). Under that rule, error that does not affect an appellant's substantial rights must be disregarded. TEX. R. APP. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Scales v. State*, 380 S.W.3d 780, 786 (Tex. Crim. App. 2012). Here, substantial evidence was presented establishing Pena's guilt on the evading arrest charge, including testimony by Officer Nichols and Pena himself. We do not believe that the admission of evidence suggesting that Pena participated in an illegal drug transaction had a "substantial and injurious effect or influence" on the jury's verdict in this case. *See id.* Accordingly, any error in admitting the evidence was harmless. *See* TEX. R. APP. P. 44.2(b). We overrule Pena's third issue.

By his fourth issue, Pena contends the trial court erred by admitting a penitentiary packet ("pen packet") into evidence. The pen packet, which reflected Pena's prior felony conviction, was accompanied by an affidavit by the Chairman of

Classification and Records for the Correctional Institutions Division of the Texas Department of Criminal Justice, which certified the authenticity of the documents contained therein. At trial, defense counsel objected to the admission of the pen packet because it was not filed with the court clerk at least fourteen days before trial under rule of evidence 902(10). *See* TEX. R. EVID. 902(10)(a) (regarding self-authenticating business records).[6] The trial court overruled the objection.

We disagree with Pena that this ruling constituted an abuse of discretion. Rule of evidence 902(10) encompasses business records and the self-authentication of those records through an affidavit. *Sharp v. State*, 210 S.W.3d 835, 840 (Tex. App.—Amarillo 2006, no pet.). A party seeking to admit records under that rule is obligated to file the records and affidavit with the court clerk at least fourteen days before trial and notify the other parties of the filing. *Id.* (citing TEX. R. EVID. 902(10)(a)). However, pen packets, such as the one at issue here, may be authenticated under a separate rule—Rule 902(4)—via a certification by their custodian that its contents are correct copies of the originals. *Id.* (citing *Reed v. State*, 811 S.W.2d 582, 586 (Tex. Crim. App. 1991); *Cuddy*

---

[6] Subsection (a) of rule of evidence 902(10) states, in its entirety, as follows:

> Any record or set of records or photographically reproduced copies of such records, which would be admissible under Rule 803(6) or (7) [regarding regularly-kept business records] shall be admissible in evidence in any court in this state upon the affidavit of the person who would otherwise provide the prerequisites of Rule 803(6) or (7), that such records attached to such affidavit were in fact so kept as required by Rule 803(6) or (7), *provided further, that such record or records along with such affidavit are filed with the clerk of the court for inclusion with the papers in the cause in which the record or records are sought to be used as evidence at least fourteen days prior to the day upon which trial of said cause commences*, and provided the other parties to said cause are given prompt notice by the party filing same of the filing of such record or records and affidavit, which notice shall identify the name and employer, if any, of the person making the affidavit and such records shall be made available to the counsel for other parties to the action or litigation for inspection and copying. The expense for copying shall be borne by the party, parties or persons who desire copies and not by the party or parties who file the records and serve notice of said filing, in compliance with this rule. Notice shall be deemed to have been promptly given if it is served in the manner contemplated by Rule of Civil Procedure 21a fourteen days prior to commencement of trial in said cause.

TEX. R. EVID. 902(10)(a) (emphasis added).

12

*v. State*, 107 S.W.3d 92, 96 (Tex. App.—Texarkana 2003, no pet.)); *see* Tex. R. Evid. 902(4) (stating that a copy of an official record may be self-authenticated via certification as to its accuracy by the custodian or other person authorized to so certify); *see also* Tex. Code Crim. Proc. Ann. art. 42.09, § 8(b) (West Supp. 2011) (stating that properly-certified pen packets are self-authenticating for the purposes of rules of evidence 901 and 902). Rule 902(4) has no notice requirement. Tex. R. Evid. 902(4); *Sharp*, 210 S.W.3d at 840. Pena does not contend that the certification accompanying the pen packet was deficient in any way. We therefore conclude that the trial court did not err in admitting the pen packet. Pena's fourth issue is overruled.

### III. CONCLUSION

Having overruled Pena's four issues, we affirm the judgment of the trial court.

_____
DORI CONTRERAS GARZA,
Justice

Do not publish.
Tex. R. App. P. 47.2(b).

Delivered and filed the
8th day of August, 2013.

13